GILLETTE, Appellant,

v.

ESTATE OF GILLETTE et al., Appellees.

[Cite as *Gillette v. Estate of Gillette,* 163 Ohio App.3d 426, 2005-Ohio-5247.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–171.

Decided Sept. 30, 2005.

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., and Mitchell M. Tallan, for appellant.

Nelson, Levine, deLuca & Horst, and Cheryl L. Ryan, for appellees.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Joyce Gillette, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee Nationwide Mutual Insurance Company ("Nationwide"). For the following reasons, we reverse and remand.

{¶ 2} On April 23, 2003, Joseph M. Gillette was driving his 1996 Ford Aerostar east on U.S. 62 in Licking County, Ohio, when he lost control of the minivan and drove it off the roadway, where it struck a culvert and flipped onto its side. Appellant, Joseph's wife, was a passenger in the minivan when it crashed, and she was seriously injured in the accident.

{¶ 3} At the time of the accident, Joseph maintained an automobile insurance policy through Nationwide. The declarations page of the policy named the minivan as the only insured vehicle and Joseph as the only named insured. Although appellant was not the named insured, Nationwide concedes that as the spouse of the named insured, appellant was an insured under the policy.

{¶ 4} Although the policy provided five different types of coverages, only three are relevant to this appeal: the "Family Compensation," "Medical Payments," and "Auto Liability" coverages. In the "Family Compensation" section of the policy, Nationwide agreed to pay medical and confinement benefits to its insureds for accidental bodily injury suffered while occupying Joseph's Ford Aerostar regardless of who was at fault for the accident. The medical benefit provided up

to $10,000 to pay for "usual, customary and reasonable charges" for "medically necessary services" rendered within one year after the accident. The confinement benefit provided $5 per day for each day of necessary and continuous indoor confinement within 360 days after the accident.

{¶ 5} In the "Medical Payments" section of the policy, Nationwide agreed to pay to its insureds "usual, customary and reasonable charges" for "medically necessary services" due to accidental bodily injury suffered by an insured while occupying the Ford Aerostar regardless of who was at fault for the accident. Finally, in the "Auto Liability" section of the policy, Nationwide agreed to pay for property and bodily injury damages for which an insured was legally liable as a result of an accident arising out of the use of the Ford Aerostar. Nationwide limited its liability for bodily injury damages to $300,000 for each person and $300,000 for each accident.

{¶ 6} Four days after the accident, a Nationwide representative sent a letter to appellant in which Nationwide acknowledged the accident and invited appellant to submit her medical bills to Nationwide. Based on the medical bills subsequently submitted, Nationwide made two payments to two different medical providers in May 2003. The payments totaled $10,000, which Nationwide maintained was the limit of benefits available to appellant under the policy. Nationwide made these two payments pursuant to the medical benefit included within the "Family Compensation" coverage.

{¶ 7} On September 3, 2003, appellant's attorney made a formal demand for further benefits, in which he asserted that appellant's medical expenses due to the accident exceeded $59,000. Appellant's attorney demanded that Nationwide render to appellant a payment equal to "the full limits of her insurance policy." Following this demand, appellant's attorney submitted further medical bills, and in December 2003, he informed Nationwide that appellant's total medical expenses topped $69,000.

{¶ 8} On January 12, 2004, Nationwide offered to settle appellant's claim against it for $100,000. Appellant rejected this offer and, on January 21, 2004, she filed a complaint against Nationwide, asserting bad faith on the part of the insurer for refusing to pay the full amount of insurance proceeds owed to her under the policy. Appellant also asserted a negligence claim against her husband for causing the accident in which she was injured.[1]

---

1. When appellant's husband died during the pendency of her lawsuit, appellant filed a first amended complaint removing Joseph and adding the estate of Joseph M. Gillette as a defendant. Ultimately, appellant settled her claim against the estate, and thus it is not at issue in this appeal.

{¶ 9} On August 5, 2004, Nationwide filed a motion for summary judgment, arguing that appellant was barred from asserting a bad-faith claim against it. Nationwide maintained that although appellant was an insured under the policy, by seeking benefits via the liability coverage Nationwide provided to her husband, she stood in the shoes of a third-party claimant. Because Ohio law precludes a third-party claimant from asserting a bad-faith claim against an insurer, Nationwide argued that it was entitled to summary judgment on appellant's bad-faith claim.

{¶ 10} While Nationwide's motion for summary judgment was pending, appellant's attorney caused the court to issue subpoenas duces tecum to the three Nationwide employees who had handled appellant's claim. The subpoenas requested that each employee attend a deposition and produce at that deposition any records regarding appellant and the accident, as well as any records regarding Nationwide's procedures for handling bodily-injury claims. In response, Nationwide filed motions to quash, arguing that because the subpoenaed employees could testify only as to facts underlying the legally insupportable bad-faith claim, appellant had no right to the depositions and records she sought. In its October 28, 2004 decision, the trial court agreed with Nationwide and granted its motions to quash.

{¶ 11} On January 24, 2005, the trial court issued a decision on Nationwide's motion for summary judgment, in which it found that appellant, as a third-party claimant, could not assert a claim for bad faith against Nationwide. On February 7, 2005, the trial court reduced this decision to judgment and rendered judgment on appellant's bad-faith claim in Nationwide's favor. Appellant now appeals from this judgment.

{¶ 12} On appeal, appellant assigns the following errors:

[1.] The trial court erred in granting the defendants' motions to quash subpoenas issued to various Nationwide Mutual Insurance Company claims adjusters, thus prohibiting plaintiff from conducting discovery depositions as to Nationwide's claims handling conduct as reflected in the court's decision of October 29, 2004 [sic].

[2.] The trial court erred in concluding, as a matter of law, that Nationwide Mutual Insurance Company did not owe a duty of good faith to its own insured, Joyce Gillette, the appellant herein.

[3.] The trial court erred in granting Nationwide Mutual Insurance Company's motion for summary judgment as to appellant's claims of bad faith.

{¶ 13} Because they are potentially dispositive, we will begin our review with appellant's second and third assignments of error, both of which challenge the trial court's ruling on summary judgment. Appellate review of summary judg-

ment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 14} By appellant's second and third assignments of error, she argues that because she is an insured under the policy, Nationwide owes her a duty of good faith, and thus she can assert a bad-faith claim against Nationwide for its unreasonable delay in resolving her claim for benefits under the policy. In response, Nationwide argues that because appellant has no valid first-party claim against it, she cannot maintain a bad-faith claim.

{¶ 15} Generally, an insurer has a duty to exercise good faith in the processing and payment of valid claims of its insured. *Beever v. Cincinnati Life Ins. Co.*, Franklin App. No. 02AP–543, 2003-Ohio-2942, 2003 WL 21321428, at ¶ 20. An insured may assert a claim for bad faith if "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus.

{¶ 16} In cases where an insured asserts a claim for bad faith, the insurer's liability does not arise from the breach of the terms of the insurance policy, but from "the breach of the positive legal duty imposed by law due to the relationships of the parties." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315. This implied-in-law duty overlies an insurer's contractual responsibilities to ensure that it will do nothing to deprive an insured of the benefits owed under the policy. *Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111, 117. See, also, *Emerson v. Med. Mut. of Ohio*, Hamilton App. No. C–030074, 2004-Ohio-3892, 2004 WL 1635604, at ¶ 35 ("The duty of good faith operates to ensure that an insurer's performance or refusal to perform under the contract does not impair the insured's right to receive benefits that he might reasonably expect to flow from the contract or the contractual relationship"); *Pasco v. State Auto. Mut. Ins. Co.* (Dec. 21, 1999), Franklin App. No. 99AP–430, 1999 WL 1221633 ("The duty of good faith * * * ensure[s] that

the acts of the insurer do not impair the insured's right to receive the benefits that would flow from the contractual relationship").

{¶ 17} In other words, "the insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured" when handling the insured's claims. *Rawlings v. Apodaca* (1986), 151 Ariz. 149, 726 P.2d 565, 570 (including a comprehensive discussion of the nature of the duty of good faith). Thus, in order for an insured to assert a breach of the duty of good faith, the insured and insurer must share a contractual relationship and the insurer must have acted unfairly in performing or refusing to perform its duty to provide the insured a benefit promised under the policy.

{¶ 18} Given the contractual relationship requirement, Ohio courts have repeatedly held that a third-party claimant cannot assert bad-faith claims against an insurer. *Siemientkowski v. State Farm Ins. Co.*, Cuyahoga App. No. 85323, 2005-Ohio-4295, 2005 WL 1994486, at ¶ 20; *McLynas v. Karr*, Franklin App. No. 03AP–1075, 2004-Ohio-3597, 2004 WL 1516849, at ¶ 29; *See v. Nationwide Mut. Ins. Co.* (May 2, 2001), Lorain App. No. 00CA007680, 2001 WL 458673; *White v. Averitt Express, Inc.* (May 5, 2000), Greene App. No. 99–CA–104, 2000 WL 543323; *Murrell v. Williamsburg Local School Dist.* (1993), 92 Ohio App.3d 92, 95, 634 N.E.2d 263; *Pasipanki v. Morton* (1990), 61 Ohio App.3d 184, 185, 572 N.E.2d 234; *Bean v. Metro. Prop. & Liab. Ins. Co.* (Oct. 26, 1988), Summit App. No. 13543, 1988 WL 114464; *D.H. Overmyer Telecasting Co. v. Am. Home Assur. Co.* (1986), 29 Ohio App.3d 31, 34, 29 OBR 32, 502 N.E.2d 694.

{¶ 19} In the vast majority of cases, a third-party claimant does not have a contractual relationship with the insurer from which it demands benefits. In the absence of a contractual relationship, the insurer does not owe a duty of good faith to the third-party claimant in handling its claims. *Hoskins,* supra, 6 Ohio St.3d at 276, 6 OBR 337, 452 N.E.2d 1315. Consequently, an insurer owes no duty of good faith to a plaintiff seeking liability coverage from a tortfeasor's insurer, and such a plaintiff is barred from bringing a claim for bad faith against the insurer. Id.; *Pasipanki,* supra.

{¶ 20} In the case at bar, appellant asserted a third-party claim against Nationwide, i.e., a claim pursuant to the "Auto Liability" portion of the policy. If appellant were not the spouse of the named insured under the policy and thus an insured herself, our analysis would end with the rule that a third-party claimant cannot assert a bad-faith claim against an insurer. However, appellant, as an insured, *does* have a contractual relationship with Nationwide, and Nationwide owes appellant certain duties under the policy. Therefore, we must address a

question of first impression in Ohio: whether a third-party claimant who is also an insured may bring a claim for bad faith against an insurer.

{¶ 21} Although no court in Ohio has addressed this issue, at least five courts in other jurisdictions have done so. All five courts concluded that an insured spouse must be treated as a third-party claimant when seeking benefits based upon a coinsured's liability coverage. *Smith v. Allstate Ins. Co.* (D.Ariz.2002), 202 F.Supp.2d 1061, 1067; *Sperry v. Sperry* (Utah 1999), 990 P.2d 381, 382; *Herrig v. Herrig* (Wyo.1992), 844 P.2d 487, 492; *Rumley v. Allstate Indemn. Co.* (Tex.App.1996), 924 S.W.2d 448, 450; *Wilson v. Wilson* (1996), 121 N.C.App. 662, 468 S.E.2d 495, 498–499. These courts recognized that each insured spouse stood in the position of a typical third-party claimant seeking liability coverage. That stance forced the coinsured to claim the protection the insurer promised to him in the policy (i.e., to pay for the damages for which he was liable) and placed the insured spouse in an antagonistic position to both the coinsured and the insurer. *Smith,* supra, 202 F.Supp.2d at 1065; *Rumley,* supra, 924 S.W.2d at 450.

{¶ 22} From this antagonistic position, the insured spouse did not seek benefits based upon a duty the insurer owed directly to her. Rather, the insured spouse sought benefits based upon the duty the insurer owed to the coinsured to pay for damages for which the coinsured was liable. Although the insured spouse might ultimately benefit from a claim under her coinsured's liability coverage, that benefit flowed from the insurer's compliance with the duty owed to the coinsured, not any duty owed to the insured spouse. Accordingly, because the insurer did not owe any contractual duty to the insured spouse to pay her liability benefits, the insurer did not owe any overlying duty of good faith in handling the insured spouse's claims for liability benefits. *Smith,* supra, 202 F.Supp.2d at 1065; *Sperry,* supra, 990 P.2d at 384; *Rumley,* supra, 924 S.W.2d at 450; *Wilson,* supra, 468 S.E.2d at 498–499.

{¶ 23} Moreover, these courts determined that requiring the insurer to owe a duty of good faith to an insured spouse would create a conflict of interest for the insurer. *Smith,* supra, 202 F.Supp.2d at 1065; *Sperry,* supra, 990 P.2d at 384; *Herrig,* supra, 844 P.2d at 491–492. The insurer would simultaneously owe inconsistent duties to both the insured spouse and the coinsured, making the insurer "an almost certain target for a claim of breach of one of these duties, in addition to the claim for the underlying negligence." *Sperry,* supra, 990 P.2d at 384.

{¶ 24} We find the reasoning in these decisions sound and consistent with Ohio jurisprudence. Although not directly on point, at least one Ohio court has refused to allow a bad-faith claim when the insurer owed no underlying contractual duty to an insured under the circumstances of the case. In *Eastham v. Nationwide Mut. Ins. Co.* (1990), 66 Ohio App.3d 843, 586 N.E.2d 1131, the

plaintiff sought recovery for an insurer's bad faith in delaying the settlement of her son's estate's uninsured-motorists claim. The court concluded that although the plaintiff was an insured under the policy, she was not owed any payment under the policy, and thus she could not assert a bad-faith claim. Id. at 846–847, 586 N.E.2d 1131. In so holding, the court stated:

> [W]e believe that liability for bad faith must be strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship. Since no such relationship existed between [the insurer] and [the plaintiff] on the claim for benefits on behalf of [the plaintiff's son], no recovery for bad faith may be had.

(Citation omitted.) Id. at 847, 586 N.E.2d 1131.

{¶ 25} Like the plaintiff in *Eastham,* appellant was an insured, but had no contractual relationship with Nationwide on her claim for liability benefits. Accordingly, she, too, cannot assert a claim for bad faith against her insurer with regard to a claim on which the insurer owed her no contractual duty.

{¶ 26} Despite the foregoing precedent, appellant argues that as a matter of policy, we should impose a duty of good faith upon Nationwide in this particular instance because Nationwide drafted its policy in such a way as to circumvent the duty of good faith. Appellant maintains that unlike Nationwide, most insurers provide benefits to an insured spouse injured by her coinsured via the uninsured-motorists section of their policies. Claims made under uninsured-motorists coverage are first-party claims that an insurer must settle in good faith. Appellant argues that Nationwide should not be able to avoid the duty of good faith by excluding her from uninsured-motorists coverage, thus forcing her to file a claim under the liability section of the policy. We disagree.

{¶ 27} First, appellant relies only on speculation to support her allegation that other insurers compensate insured spouses through uninsured-motorists coverage, as opposed to liability coverage. Second, even if appellant's speculation is correct, the Ohio General Assembly has allowed insurers to exclude insureds in appellant's position from uninsured-motorists coverage since it amended R.C. 3937.18 through Am.H.B. No. 261, effective September 3, 1997. See current R.C. 3937.18(C) (Am.S.B. No. 97, effective Oct. 31, 2001); former R.C. 3937.18(K)(1) (enacted by Am.H.B. No. 261; repealed by Am.S.B. No. 97); former R.C. 3937.18(K)(2) (enacted by Am.H.B. No. 261; repealed by Sub.S.B. No. 267, effective Sept. 21, 2000). Accordingly, the Nationwide policy complies with Ohio law. Further, we decline to engage in the policy-making appellant advocates.

{¶ 28} In sum, we conclude that although appellant is an insured under the Nationwide policy, where she seeks liability coverage for the negligence of the named insured—her husband—she stands in the shoes of a third-party claimant who is not owed any contractual duty by the insurer. Thus, we conclude that

appellant is barred from asserting a claim for bad faith for Nationwide's delay in paying her benefits pursuant to the "Auto Liability" section of the policy.

{¶ 29} However, our analysis is not finished. Appellant did not limit her claim for benefits under the policy to the "Auto Liability" section. Indeed, appellant argues in her brief that Nationwide also acted in bad faith when it delayed payment pursuant to the "Medical Payments" and the "Family Compensation" sections of the policy. As to both of these coverages, appellant is a first-party claimant because Nationwide agreed to provide "Medical Payments" and "Family Compensation" benefits to her, as an insured, for her own losses and expenses. 14 Russ, Couch on Insurance (3d Ed.2005), Section 198:3 (in a first-party claim, the insured seeks coverage pursuant to a "contract between the insurer and insured protecting the insured's own actual losses and expenses"). Therefore, Nationwide not only owed her a duty to provide the benefits promised pursuant to these coverages, but it also owed her a duty to exercise good faith in handling her claims pursuant to these coverages. Consequently, if appellant can prove that Nationwide delayed payment, without reasonable justification, for the benefits she alleges she was entitled pursuant to the "Medical Payments" and "Family Compensation" coverages,[2] she can recover damages for Nationwide's breach of its duty of good faith.

{¶ 30} Accordingly, we sustain appellant's second and third assignments of error.

{¶ 31} By appellant's first assignment of error, she argues that the trial court erred in granting Nationwide's motions to quash the subpoenas issued to the claims adjustors who dealt with her claim. The trial court granted these motions because it held that appellant could not assert a claim for bad faith against Nationwide. Because we have concluded that appellant may assert a limited claim for bad faith, we conclude that appellant is entitled to discovery as to that claim. Accordingly, we sustain appellant's first assignment of error.

{¶ 32} For the foregoing reasons, we sustain appellant's first, second, and third assignments of error. We reverse the trial court's October 28, 2004 and February 7, 2005 judgments and remand the cause for further proceedings in accordance with law and this opinion.

Judgments reversed
and cause remanded.

BROWN, P.J., and McGRATH, J., concur.

---

2. Significantly, we do not address the validity of appellant's claim for benefits under these sections of the policy. Rather, we merely conclude that a claim for benefits under these sections is a first-party claim and, thus Nationwide's alleged bad faith in handling it can serve as a basis for appellant to assert a legal claim.