NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0332n.06

No. 18-3532

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRUCE B. WHITMAN, Individually and on behalf of Joy Whitman and on behalf of Laura Whitman, | ) ) ) | **FILED** Jul 02, 2019 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| FREDERICK D. TUCKER; ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendants-Appellees, | ) ) | |
| ESTHER WHITMAN, Executrix of the Estate and on behalf of Roy Whitman, | ) ) ) | |
| Defendant. | ) | |

Before: MERRITT and LARSEN, Circuit Judges.[1]

LARSEN, Circuit Judge. Bruce, Laura, and Joy Whitman asserted claims against Allianz Life Insurance Company of North America and one of its agents, Frederick Tucker, arising out of annuity contracts Allianz had executed with the plaintiffs' deceased father. The district court granted judgment on the pleadings to Allianz and Tucker and refused to allow further discovery in the matter or another amendment to the complaint. The children appealed, and we AFFIRM.

---

[1] The third member of this panel, Judge Damon J. Keith, died on April 28, 2019. This order is entered by the quorum of the panel. 28 U.S.C. § 46(d).

I.

Roy Whitman bought several annuity contracts from Allianz in 2001. Each annuity, prepared by Allianz agent Frederick Tucker, named one of Roy's three children from his first marriage (Bruce, Laura, and Joy, the plaintiffs below) as the annuitant. Each contract also provided that if Roy were to die before the annuitant, his rights under the annuities would "pass to the executor of [his] estate unless ownership has been otherwise assigned." Roy passed away in 2016, before any of his children. Roy's second wife, Esther Whitman, was named executor of Roy's estate.

In April 2017, each of the three children made a claim for the distribution amount of the annuity for which he or she was listed as annuitant. Esther, as executor of Roy's estate, rejected all three claims, contending that the annuity distributions were estate assets. The children then sued Esther in state court, and later asserted additional claims for professional negligence and bad faith against Allianz and Tucker. According to the children's allegations, Roy had intended for them to receive the annuity distributions after he died, but Tucker had negligently failed to prepare annuities to reflect that intent. The children also alleged that Allianz had acted in bad faith by not immediately paying them the annuity distributions upon demand.

Rather than take sides in the dispute between Esther and the children, Allianz removed the case to federal court as a statutory interpleader action under 28 U.S.C. § 1335. Allianz deposited the distribution amounts with the district court, *id.* at § 1335(a), so that the court could distribute the funds after determining the proper recipient. Esther and the children thereafter settled their differences and filed a joint motion requesting that the district court release the interpleaded funds to the children, with a small portion to Esther's attorney. The district court released the interpleaded funds as requested and dismissed Esther from the action.

Allianz and Tucker moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure as to the children's claims for negligence (against Tucker and Allianz) and bad faith (against Allianz only). The children opposed and asked that the district court first allow discovery and then decide the motions as summary judgment motions. The children also asked for leave to file a fourth amended complaint. The district court granted Allianz and Tucker's motions and denied the children's, holding that: (1) the negligent misrepresentation claims were barred by the statute of limitations; (2) annuity contracts could not give rise to tort claims of bad faith under Ohio law, and the children lacked the privity with Allianz necessary to assert such claims anyway; and (3) because of these legal defects, no amendment to the complaint or discovery could salvage the children's claims. The children timely appealed.

## II.

We review de novo the grant or denial of a Rule 12(c) motion. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006). We accept the complaint's factual allegations as true and "determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). The standards for evaluating Rule 12(b)(6) motions and Rule 12(c) motions are functionally identical. *Id.* at 511–12. "We review the district court's interpretation . . . of state law de novo." *Id.* at 512.

The district court properly determined that Allianz and Tucker were entitled to judgment on the pleadings as to the children's negligent misrepresentation claims. Under Ohio law, a four-year statute of limitations applies to professional negligence claims, including the children's claim against Allianz and Tucker. *See* Ohio Rev. Code § 2305.09; *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209–10 (Ohio 1989). The Ohio Supreme Court "has long recognized" that statutes of

limitations begin to run when the tortfeasor's action occurs, even if "the actual injury is subsequent." *LGR Realty, Inc. v. Frank & London Ins. Agency*, 98 N.E.3d 241, 245 (Ohio 2018) (quotation marks omitted). There are two exceptions to this general rule. First, the discovery rule provides that "when an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or by the exercise of reasonable diligence should have known, that he had been injured by the conduct of the defendant." *Id.* at 245–46 (quotation marks omitted). The second exception is the delayed-damages rule, which applies when "the wrongful conduct complained of is not presently harmful," and so "the cause of action does not accrue until actual damage occurs." *Id.* at 246.

The children assert that, per the delayed-damages rule, their negligent misrepresentation cause of action did not accrue until their father's death in 2016, when they learned of Tucker's alleged negligence in preparing the annuity contracts. They claim that no actual damage occurred until the annuities failed to provide them the distributions. But this argument is squarely foreclosed by *LGR Realty*. *Id.* at 248. There the Ohio Supreme Court held that the statute of limitations for a negligence claim against an insurance provider "began to run when [the insurance company] issued the insurance policy" that contained the alleged errors. *Id.* The court rejected the argument that no damages had occurred until the insured discovered the defects. Rather, "[i]f, as [the insured] argues, it was injured by the insurance policy containing the [defective provisions], [the insured] was damaged the moment it entered into the contract." *Id.* For the same reasons, any harms arising from the allegedly defective annuity contracts arose "the moment [Roy] entered into

the contract" in 2001. *Id.* So the statute of limitations ran in 2005, over a decade before the children filed their claims against Allianz and Tucker.[2]

The children argue that the delayed-damages rule should apply here because they "were not aware of the negligence . . . until their claims for payout were denied." But, in contrast to the discovery rule, the delayed-damages rule is not triggered when plaintiffs become *aware* of claims; it deals with when the damage occurs. *Id.* at 246. And to the extent the children invoke the discovery rule, that exception is likewise unavailing because it does not apply to professional negligence claims. *Flagstar Bank, F.S.B. v. Airline Union's Mort. Co.*, 947 N.E.2d 672, 535 (Ohio 2011) ("In *Investors REIT One*, we explicitly rejected the application of the discovery rule for . . . causes of action [governed by Ohio Revised Code § 2305.09].").

The children argue that *LGR Realty* announced a third exception to the normal accrual rules. They say this "unconscionability exception" applies broadly to any situation in which the statute of limitations would run out "before [the plaintiff] is even aware of [the claim's] existence." We do not see any new exception in *LGR Realty*. Rather, *LGR Realty* explains that Ohio courts

---

[2] The children argue that the delayed-damages exception should apply under the rule articulated in *Kunz v. Buckeye Union Insurance Co.*, 437 N.E.2d 1194, 1197 (Ohio 1982). However, there is significant uncertainty over whether *Kunz* remains valid. A three-justice plurality opinion in *LGR Realty* distinguished *Kunz* on its facts and explicitly declined to address whether *Kunz* was still good law. 98 N.E.3d at 247. Two concurring justices, on the other hand, argued that *LGR Realty* and *Kunz* were directly in conflict and "cannot both be law." *Id.* at 249–51 (DeWine, J., concurring). Ultimately, said the concurring justices, "*Kunz* has been overruled." *Id.* at 251 (DeWine, J., concurring).

We need not resolve this question. Even if *Kunz* is still good law, the reasons offered by the plurality in *LGR Realty* for distinguishing *Kunz* would also distinguish it here. The plurality in *LGR Realty* thought *Kunz* "not controlling" because the plaintiffs had purchased a new policy that contained the defects from inception, while the *Kunz* plaintiffs had purchased a policy that initially reflected the parties' intent, but which later became defective "when that individual policy was consolidated into the omnibus policy." *Id.* at 522. Applying that analysis here, *LGR Realty* controls because it involves the purchase of new contracts rather than the consolidation of preexisting annuity contracts.

"have judicially created or recognized an exception" to the normal accrual rules "only in the narrow circumstances in which application of the general rule 'would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence.'" 98 N.E.3d at 247 (quoting *Wyler v. Tripi*, 267 N.E.2d 419, 422 (Ohio 1971)). This language does not create a new exception; it explains the purposes of the "two primary exceptions" to the general rule, the discovery rule and the delayed-damages rule. *Id.* at 245, 247. And no Ohio court has subsequently read *LGR Realty* to create a third exception to the accrual rules.

There is, in any event, an independent reason the claims cannot survive the Rule 12(c) motion; the children may not assert these claims under Ohio law. Ohio law grants a cause of action for professional negligence only to individuals who personally received subpar advice or services from a professional. *See Beard v. N.Y. Life Ins. & Annuity Corp.*, No. 12AP-977, 2013 WL 4678105, at *7 (Ohio Ct. App. Aug. 27, 2013). Roy Whitman may have received subpar service from Tucker and Allianz, but the children did not—in fact, they were not involved in the process at all. As such, even if the statute of limitations had not run, the children would not themselves be entitled to bring these claims. *Id.*; *cf. Shoemaker v. Gindlesberger*, 887 N.E.2d 1167, 1168 (Ohio 2008) (holding that "a beneficiary of a decedent's will may not maintain a negligence action against an attorney for the preparation of a deed that results in increased tax for the estate").

III.

The district court also correctly determined that the annuity contracts at issue in this case did not give rise to an action for the tort of bad faith under Ohio common law. Insurers must act in good faith in processing claims, and an insurer's failure to do so gives rise to a tort claim by the insured. *See Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399 (Ohio 1994). But annuity

contracts are not insurance contracts, and the mere happenstance that some Ohio statutes apply to both[3] does not make annuity contracts "insurance" for all purposes. *See Trangenstein v. Wheaton College Bd. of Trs.*, 773 N.E.2d 602, 604 (Ohio Ct. App. 2002) ("The ordinary annuity contract and the ordinary contract of life insurance are different in essential respects." (alteration omitted) (quoting *Bronson v. Glander*, 77 N.E.2d 471, 472 (Ohio 1948))). The children have pointed to no Ohio case—and we have found none—that has extended the bad faith tort to cover disputes over annuity distributions. Federal courts, of course, should "be extremely cautious about adopting 'substantive innovation' in state law," *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004), and the children have given us no reason to believe their position reflects existing Ohio law.

Ohio law "only recognizes an implied covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract." *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008). The children have not pointed to any contract language that could create such a duty in these circumstances. And the logic underlying the Ohio Supreme Court opinions that created and defined the bad faith tort weighs heavily against expanding it to include annuities generally. Those cases affirm that:

> The imposition of the duty of good faith upon the insurer is justified because of the relationship between the insurer and the insured and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of the great disparity between the economic positions of the parties to a contract of insurance; and furthermore, at the time an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement or a release.

---

[3] *See* Ohio Rev. Code § 3902.01 (establishing "minimum standards for language used in policies and certificates of life insurance and annuities"); *id.* at § 3902.02 (defining "company" or "insurer" as "any entity authorized to do the business of life insurance and annuities, sickness and accident insurance, credit life insurance, or credit disability insurance; a fraternal benefit society; and a health insuring corporation").

*Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983) (alterations and quotation marks omitted). The considerations that underlie imposing extracontractual duties on an insured simply do not extend to annuities. As a general matter, a beneficiary or annuitant claiming entitlement to a distribution does not do so under pressing threat of liability or litigation.

Furthermore, Ohio courts have been wary of broadening the tort of bad faith, even within the insurance context itself. In *Tokles & Son, Inc. v. Midwestern Indemnity Co.*, 605 N.E.2d 936, 945 (Ohio 1992), the Ohio Supreme Court rejected an insurance company's argument that the court should establish a mirror image tort for insurance companies to assert against insureds who file bad faith or fraudulent claims. And in *Gillette v. Estate of Gillette*, 837 N.E.2d 1283, 1286–87 (Ohio Ct. App. 2005), the court held that only the insured may bring a bad faith claim against the insurer; third parties asserting liability against the insured cannot. All this counsels against our expanding the Ohio bad faith tort to the annuity context.

Finally, the children cannot assert a bad faith claim—even assuming such a claim could arise from an annuity contract—because the children were not in privity with Allianz. The contracts were between their father and Allianz. And "[i]n the absence of a contractual relationship . . . an insurer owes no duty of good faith to [third parties], and such a plaintiff is barred from bringing a claim for bad faith against the insurer." *Gillette*, 837 N.E.2d at 1287; *see also Eastham v. Nationwide Mut. Ins. Co.*, 586 N.E.2d 1131, 1133 (Ohio Ct. App. 1990) ("However, the insurer's duty of good faith and fair dealing derives from and exists *solely because of its contractual relationship with its insured*. . . . '[W]e believe that liability for bad faith *must be strictly tied* to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship." (emphasis added)). As such, the district court properly granted judgment on the pleadings to Allianz.

IV.

We now review the denial of the children's other motions. First, the children asked the district court to convert the Rule 12(c) motions to summary judgment motions and allow discovery before ruling on them. In support of their request, the children attached several documents they had received from Allianz which, they claimed, "clearly show evidence as to the negligent misrepresentation and bad faith alleged." The district court denied the request "because additional facts are not necessary to rule on [the children's] claims against Tucker and Allianz." We review the denial of that motion for abuse of discretion. *Coomer v. Fifth Third Bank*, 811 F.2d 604, at *3 (6th Cir. 1986) (table).

The general rule is that when litigants present evidence outside of the pleadings in conjunction with a Rule 12(c) motion, and the district court does not specifically exclude these materials, the district court must convert the Rule 12(c) motion to a motion for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006). But there was no reversible error here because Allianz and Tucker were entitled to judgment as a matter of law regardless of any "evidence as to the negligent misrepresentation and bad faith alleged." A party asserting time-barred or legally insufficient claims cannot prolong litigation and force discovery under Rule 12(d) by submitting evidence not relevant to the grounds for dismissal. *See Max Arnold*, 452 F.3d at 504 (finding no reversible error from the failure to give notice of conversion and opportunity for discovery because "all parties in fact had a sufficient opportunity to present *pertinent* materials" (emphasis added)); *Strehlke v. Grosse Point Pub. Sch. Sys.*, 654 F. App'x 713, 718 (6th Cir. 2016) (same). Therefore, the outcome of these motions would be the same whether considered under Rule 12(c) or Rule 56. We find no reversible error.

The children also requested leave to file a fourth amended complaint in order to more explicitly allege that they lacked knowledge of the contract terms until their father's death, which they believed would support their claim that the delayed-damages rule applies here. We review the district court's denial of that request for abuse of discretion, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 622 (6th Cir. 2019), and discern no basis for reversal. We, like the district court, assumed for the limitations period analysis that the children were unaware of the annuity contracts' terms until their father's death. Even so, the claims are barred for the reasons discussed above. As such, any amendment would have been futile. *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993). There was no abuse of discretion.

\* \* \*

For the foregoing reasons, we AFFIRM the district court in all respects.