452 S.E.2d 384

**Annie CHARLES, Administratrix of the Estate of Deborah Jewell, Deceased, Plaintiff Below, Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, James Muncy and Stanley Bowen, Defendants Below,**

**State Farm Mutual Automobile Insurance Company, Plaintiff Below, Appellant.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**James MUNCY, Stanley Bowen and Annie Charles, Administratrix of the Estate of Deborah Jewell, Deceased, Defendants Below, Appellees.**

No. 21662.

Supreme Court of Appeals of West Virginia.

Submitted Upon Rehearing Oct. 5, 1994.

Decided Nov. 18, 1994.

15. Mr. McCorkle apparently had contacts in the coal industry.

Richard Thompson, Huntington, for A. Charles and J. Muncy.

Kenneth H. Fisher, Huntington, for S. Bowen.

James D. McQueen, Jr., Kathlene Harmon–McQueen, Maria Marino Potter, McQueen & Brown, L.C., Charleston, for appellant.

NEELY, Justice:

This case was originally submitted for decision at the January, 1994 term of this Court and an opinion was filed on 15 June 1994. Thereafter, the appellant, State Farm Mutual Automobile Insurance Company, petitioned for a rehearing and said petition was granted. On 5 October 1994, this case was reheard and the Court thereafter withdrew the original opinion and the Court issues the following opinion.

## FACTS

James Muncy, a resident of Kentucky, owned an automobile insured by State Farm under a policy issued in Kentucky. On 11 January 1989, Deborah Jewell (the daughter of James Muncy) and Stanley Bowen were occupants of the Muncy vehicle when it stalled on a Norfolk and Southern Railway Company track intersecting State Secondary Route 29/9 near Bull Creek, Crum, Wayne County, West Virginia. A train hit the car killing Deborah Jewell instantly. Stanley Bowen had leapt from the car and escaped the accident unscathed.

Annie Charles in her capacity as Administratrix of the Estate of Deborah Jewell instituted a wrongful death action against Norfolk and Southern Corporation, the Norfolk and Western Railway Company and Mr. Bowen. The Norfolk and Western filed a cross-claim against Mr. Bowen alleging that it was entitled to comparative contribution. Mr. Bowen filed a cross-claim against the Norfolk and Western alleging negligent operation of the train and negligent maintenance of the crossing. These allegations are the same allegations made by the Estate in its complaint. Mr. Bowen also filed a counter-claim against the Estate in which he claimed that Ms. Jewell was negligently operating the automobile in which he was a passenger, causing him to suffer extreme mental distress. When counsel for the Estate notified

State Farm of the counterclaim, State Farm retained counsel pursuant to the liability provisions of a policy of insurance on the automobile owned by Mr. Muncy to defend the Estate against the Bowen counterclaim. According to State Farm, neither Mr. Bowen nor his lawyer commended the defense of Mr. Bowen to State Farm or otherwise sought the protection of the liability insurance coverage on the Muncy automobile.

The wrongful death action proceeded through discovery, and Mr. Bowen's discovery deposition was taken. Other discovery depositions were also taken, and eventually counsel for the Estate served notice on State Farm suggesting, for the first time, that Mr. Bowen had been the operator or user of the Muncy vehicle at the time of the accident. Thus State Farm was formally notified of a potential uninsured or underinsured motorist claim under *W.Va.Code* 33-6-31 [1988]. Shortly thereafter State Farm employed counsel to defend Mr. Bowen but reserved, by letter to Mr. Bowen, its right to challenge that there was liability coverage for him under the Muncy policy. The wrongful death action was scheduled for trial in April, 1991, but the Court granted a continuance until August, 1991 in response to a request from the lawyer State Farm had hired to defend Mr. Bowen.

During the following four and one half months, other discovery was conducted or attempted that dealt primarily with Mr. Bowen's damage claims against the Norfolk and Western. Because Mr. Bowen did not submit to an agreed independent medical examination or designate expert witnesses as required by circuit court order, and because Mr. Bowen's personal lawyer failed to appear at multiple hearings scheduled by the Norfolk and Western to enforce discovery, the court dismissed Mr. Bowen's counterclaim and cross-claim.

On 16 August 1991, State Farm instituted a declaratory judgment action in Federal District Court to determine coverage issues. On 18 May 1992, the federal declaratory judgment action was dismissed, without prejudice, pursuant to *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992), which strongly encourages a federal district judge to decline to entertain an insurer's declaratory judgment action when the primary litigation seeking recovery from the insured is pending in state court at the time the federal action is filed. Meanwhile, however, back in the state court, on 19 August 1991, the wrongful death action between Ms. Charles (the Administratrix of the deceased's estate) and Mr. Bowen and the Norfolk and Western began. After the selection of the jury, the Norfolk and Western settled with the Estate for $50,000. The following day, the claim against Mr. Bowen was tried to a jury and the jury returned a verdict against Mr. Bowen, finding him to be 100 percent negligent, and awarded the Estate $400,000 in damages. No offset was allowed by the circuit court for the $50,000 Norfolk and Western settlement. Mr. Bowen failed to appear at trial but was, nonetheless, defended by the lawyer State Farm had retained to protect his interests.

After the verdict, the Estate was granted leave to file an amended complaint within the same civil action in which it named State Farm and Mr. Muncy as direct defendants. The amended complaint sought extra-contractual and punitive damages from State Farm for the excess verdict and for bad faith and unfair claims settlement practices. Although the post-verdict amended complaint did, for the first time, name James Muncy as a defendant, it sought no damages or other relief from him. The extra-contractual claims against State Farm were stayed by order of the lower court pending an anticipated appeal of the tort claim and resolution of the coverage issues raised in the federal court action. However, the tort claim was never appealed, probably because State Farm was reluctant to post an appeal bond of over $400,000.

When the federal declaratory judgment action was dismissed, State Farm then promptly refiled the same declaratory judgment action in the circuit court and the circuit court consolidated that action with the excess verdict, bad faith and unfair claims settlement practices allegations remaining within the original wrongful death action, as amended after the verdict. On 9 October 1992, the circuit court granted partial summary judgment in favor of the Estate of Deborah Jew-

ell and Mr. Bowen. The circuit court specifically found that: (1) there was in full force and effect on 11 January 1989 a policy of insurance issued by State Farm to James Muncy insuring the vehicle involved on that date in a collision in Wayne County, West Virginia; (2) under applicable law, it is West Virginia law that governs interpretation of the policy; (3) under West Virginia law a charge of "failure to cooperate" will not void the policy; (4) the policy in question afforded benefits to the defendant Mr. Bowen as an additional insured; and, (5) State Farm, in their defense of Mr. Bowen, neither complied with their duties set forth in *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990), nor demonstrated a justifiable basis for not so complying. In view of these findings, the lower court ordered State Farm to pay the $400,000 judgment. It is from this order of the circuit court that State Farm now appeals.

The issues on appeal, then, are these: (1) should State Farm be exonerated from paying any of the $400,000 judgment based upon the failure of Mr. Bowen to cooperate with State Farm in the defense of the underlying civil action; (2) if State Farm is not entirely exonerated, should State Farm pay any part of the $400,000 judgment in excess of what appears to be the policy limit of $20,000 (i.e., the mandatory West Virginia statutory coverage); (3) if there is potential liability for any part of the excess judgment did the trial court err in simply ordering State Farm to pay the excess judgment without a hearing or jury trial; and (4) did the trial court err in failing to reduce the $400,000 jury verdict by the $50,000 settlement paid before trial by Norfolk and Southern?

## I.

It is important at the outset to point out that Mr. Muncy, the owner of the automobile, was not named as a defendant in the original action brought by the Administratrix against Mr. Bowen and the Norfolk and Western. Although Mr. Muncy was named in the amended complaint after the $400,000 verdict was returned by the jury, he was named only for reasons having to do with State Farm's insurance coverage and not as an individual who was potentially personally liable. Indeed, at oral argument in this Court, the lawyers pointed out that Mr. Muncy is one of the distributees of the proceeds of Deborah Jewell's Estate under the West Virginia Wrongful Death of Act in effect at the time of the accident.

State Farm makes much moment of the fact that Mr. Bowen refused to cooperate in any way in the defense of this case. Mr. Bowen is probably judgment proof, and we may reasonable infer from the record that Mr. Bowen is not a paragon of responsibility. However, if under the West Virginia Family Purpose Doctrine the person who would be compelled to pay the judgment were Mr. Muncy, an entirely innocent policyholder who bought insurance for the purpose of protecting his private assets, we would say that Mr. Bowen's failure to cooperate would not exonerate State Farm from liability for the entire amount of the judgment under Syllabus Points 3 and 4 of *Shamblin v. Nationwide Mut. Ins. Co., supra.* In this last regard, the majority wrote in *Shamblin* in Syllabus Points 3 and 4:

3. It will be the insurer's burden to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own.

4. In assessing whether an insurer is liable to its insured-for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances, bearing in mind always its duty of good faith and fair dealing with the insured. Further, in determining whether the efforts of the insurer to reach settlement and to secure a release for its insured as to personal liability are reasonable, the trial court should consider whether there was appropriate investigation and evaluation of the claim based upon objective and cogent evidence; whether the insurer had a reasonable basis to conclude

that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others.

In *Shamblin* I wrote a concurring opinion indicating that I would go even farther than the majority had gone and hold that an insurance company that failed to offer to settle within the coverage limits is *ipso facto* liable for the entire judgment if the case proceeds to trial and the policyholder is found liable for an amount in excess of his coverage limits. However, under either the majority's very strict "good faith" standard in *Shamblin* or my absolute liability standard, no one has yet suggested that the purpose of the *Shamblin* doctrine is to protect victims, although the recent case of *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994) indicates that a victim may assert a bad faith against an insurance carrier and demand that the carrier meet the Shamblin standard to exonerate itself. Nonetheless, regardless of the final contours of the law that has just been adumbrated in *Marshall, supra* [1] it is beyond cavil that the original *Shamblin* doctrine was created to protect policyholders who purchase insurance to safeguard their hard-won personal estates and then find these estates needlessly at risk because of the intransigence of an insurance carrier.

Although Mr. Bowen was not the original purchaser of the insurance, he was nonetheless an "insured" under the policy and is, therefore, entitled to the protections of the *Shamblin* doctrine to the extent that as an "insured" he has not forfeited his rights under *Bowyer by Bowyer v. Thomas*, 188 W.Va. 297, 423 S.E.2d 906 (1992). The first three syllabus points of *Bowyer* provide:

1. Before an insurance policy will be voided because of the insured's failure to cooperate, such failure must be substantial and of such nature as to prejudice the insurer's rights.

2. In addition to prejudice, the insurer must show that its insured willfully and intentionally violated the cooperation clause of the insurance policy before it can deny coverage.

3. The insurer must exercise reasonable diligence in obtaining the insured's cooperation, including attendance at trial, before the policy will be voided.

■ Thus, we hold that if Mr. Bowen's failure to cooperate was such that it prejudiced State Farms' ability to defend this lawsuit, and State Farm otherwise meets the criteria of Bowyer, Mr. Bowen has no right to the protection of the *Shamblin* doctrine or any right to demand that State Farm pay on his behalf the excess judgment.

Unfortunately, State Farm has never had an opportunity fully and completely to develop this issue. Furthermore, although in most *Shamblin*-type cases the facts are so clear that summary judgment is appropriate because there are no legitimately contested issues, such is not necessarily the case here. Under Rule 18, *WVRCP*, the trial court committed no error by allowing the complaint to be amended after judgment to assert a *Shamblin* cause of action, *Poling v. Motorists Mutual Insurance Co.*, 192 W.Va. 46, 450

---

1. One reason for extending the *Shamblin* doctrine would be to control escalating insurance costs. We must constantly craft rules to prevent the diversion of policyholder money to frivolous litigation at enormous hourly rates. Without mechanisms like *Shamblin* that attract the attention of senior non-lawyer insurance company management to the likely diversion of company money to unnecessary litigation, insurance lawyers will devour premiums and force up rates. It is the writer's observation that although it is standard practice to defend a meritorious claim by attempting to create a conflict of interest between plaintiffs' lawyers and their clients, all that usually happens is that policyholder costs go up. Under the conflict of interest strategy, if the lawyer accepts a low ball offer, he ends up working for $500 an hour, although he sells his client out. However, if he holds out for a fair settlement or trial, he ends of up working for $50 an hour, but the client prospers. However, the new breed of victims' lawyers have more character than to succumb to this type of hourly-billing intimidation, so money is wasted on lawyers' fees for both sides and premiums skyrocket. Early settlements, even when perfectly fair, are still cheap settlements because clients will accept a fair discount for prompt payment and lawyers can accept a lower fee because of a lower investment of time and money. Low insurance costs in West Virginia, then, are largely the result of cases like *Shamblin* and *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986) and our new *Marshall* case, *supra* in text.

S.E.2d 635 (1994), but under the facts of this case State Farm is probably entitled to a jury determination of whether Mr. Bowen so failed to cooperate that the *Bowyer* standard has been met.

Accordingly, we remand this case to the circuit court for appropriate proceedings to determine the exact extent of Mr. Bowen's cooperation or lack thereof and for a determination of whether his conduct was sufficiently egregious as to meet the *Bowyer* standard.

## II.

■ State Farm asserts that because the victim of the accident was the policyholder's daughter, under the plain language of the policy as interpreted under Kentucky law, no recovery may be had against State Farm by the estate. The policy in question provides as follows:

THERE IS NO COVERAGE:

\*   \*   \*   \*   \*   \*

2.  FOR ANY **BODILY INJURY** TO:

\*   \*   \*   \*   \*   \*

C. ANY **INSURED** OR ANY MEMBER OF AN **INSURED'S** FAMILY RESIDING IN THE **INSURED'S** HOUSEHOLD *TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EXCEED THE LIMITS OF LIABILITY REQUIRED BY LAW.* [Emphasis added.]

The policy further provides that when the covered vehicle is being driven out of state, "the policy will be interpreted to give the coverage required by law...."

Under Kentucky law, the terms of an insurance policy are enforced as drawn in the absence of ambiguities. *Hendrix v. Fireman's Fund Insurance Company*, Ky.App., 823 S.W.2d 937 (1991); *Osborne v. Unigard Indemnity Co.*, Ky.App., 719 S.W.2d 737 (1986); *Woodard v. Calvert Fire Ins. Co.*, Ky., 239 S.W.2d 267 (1951). Thus, although we do not gainsay State Farm's argument that it is Kentucky law that applies to the construction of the policy in this case, *Johnson v. Neal*, 187 W.Va. 239, 418 S.E.2d 349 (1992), the policy, by its own terms (and

regardless of whether Kentucky or West Virginia law is applied) affords the West Virginia mandatory $20,000 coverage notwithstanding the relationship of the victim of the accident to the owner of the vehicle.

*W.Va.Code* 17D-4-12(b)(2) [1991] provides a mandatory $20,000 insurance in West Virginia for bodily injury or death to one person in one accident and a mandatory $40,000 for bodily injury or death of two or more persons in one accident. Therefore, by the policy's own terms, State Farm has always been liable for the West Virginia $20,000 minimum coverage because the accident took place in West Virginia. Of course, coverage in excess of the minimum requirements is not subject to the provisions of Chapter 17D, Article 4, as to such excess coverage. *W.Va.Code* 17D-4-12(g) [1991].

## III.

■ Finally, in the event that the circuit court should hold that Mr. Bowen's lack of cooperation did not rise to the *Bowyer* standard and thus conclude that the entire judgment is due and owing, we should address the effect of Norfolk and Western's $50,000 settlement with the Estate before trial.

It has long been our law that when one or more joint tortfeasors in a case settles in good faith with the plaintiff, such settlement is to be credited against any judgment rendered against other joint tortfeasors. *Board of Educ. of McDowell County v. Zando, Martin et al.*, 182 W.Va. 597, 390 S.E.2d 796 (1990). In *Zando*, we said in Syl. pts. 5 and 7:

5. " 'Where a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong.' Point 2, Syllabus, *Hardin v. The New York Central Railroad Company*, 145 W.Va. 676 [116 S.E.2d 697 (1960)]." Syllabus Point 1, *Tennant v. Craig*, 156 W.Va. 632, 195 S.E.2d 727 (1973).

7. Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously

made with the plaintiff by other jointly liable parties. Those defendants against whom the verdict is rendered are jointly and severally liable to the plaintiff for payment of the remainder of the verdict. Where the relative fault of the nonsettling defendants has been determined, they may seek contribution among themselves after judgment if forced to pay more than their allocated share of the verdict.

Accordingly, the trial court was wrong in failing to reduce the $400,000 jury award by the $50,000 settlement on the part of the Norfolk and Southern Railway. The fact that at trial (with Norfolk and Southern not participating) Mr. Bowen was found 100 percent at fault does not alter the fact that Norfolk and Southern was sued as a joint tortfeasor, settled in good faith, and as a result of such settlement insulated itself from any action for contribution by State Farm or Mr. Bowen. *Zando, supra.*

In summary, then, we find that the circuit court was correct in holding that: there was in full force and effect on 11 January 1989 a policy of insurance issued by State Farm to James Muncy insuring the vehicle involved on that date in a collision in Wayne County, West Virginia; under applicable law, it is West Virginia law that controls the mandatory coverage provision of the policy; and, the policy in question afforded benefits to the defendant Stanley Bowen as an additional insured. However, we reverse the circuit court's finding that Mr. Bowen's alleged failure to cooperate has no effect whatsoever upon State Farm's liability under *Shamblin v. Nationwide, supra,* and accordingly we remand this case to the Circuit Court of Wayne County for further proceedings on the issue of Mr. Bowen's failure to cooperate under *Bowyer, supra* and the degree to which such failure to cooperate implicates State Farm's obligations under *Shamblin.*

Accordingly, the judgment of the Circuit Court of Wayne County is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.