716 S.E.2d 696

**Thomas D. LOUDIN and Alice M. Loudin, Plaintiffs Below, Appellants**

v.

**NATIONAL LIABILITY & FIRE INSURANCE COMPANY; Jack Sergent; D.L. Thompson; and Consolidated Claim Services, Inc., Defendants Below, Appellees.**

No. 35763.

Supreme Court of Appeals of West Virginia.

Submitted April 12, 2011.

Decided Sept. 22, 2011.

Dissenting Opinion of Justice Benjamin Oct. 24, 2011.

Erika Klie Kolenich, Klie Law Offices, Buckhannon, WV, Ronald W. Zavolta, Law Office of Ronald Zavolta, Wheeling, WV, for Appellants.

Don C.A. Parker, Spilman, Thomas & Battle, Charleston, WV, Attorney for Appellees.

Jill Cranston Bentz, Mychal Sommer Schulz, Jacob A. Manning, Dinsmore & Shohl, Charleston, WV, Attorneys for Amicus Curiae, West Virginia Insurance Federation.

DAVIS, Justice:

This is an appeal by Thomas and Alice Loudin, appellants herein and plaintiffs below (hereinafter "the Loudins"),[1] from an order of the Circuit Court of Upshur County that granted summary judgment in favor of National Liability & Fire Insurance Company; Jack Sergent; D.L. Thompson; and Consolidated Claim Services, Inc., appellees herein and defendants below. The circuit court's summary judgment order found that the Loudins were third-party claimants and therefore could not bring an action for conduct involving an insurance policy claim on theories of common law bad faith, breach of the insurance contract, breach of the implied duty of good faith and fair dealing, and violations of the West Virginia Unfair Trade Practices Act. The order also found that the Loudins failed to present evidence to sustain their cause of action for the tort of outrage.

After listening to the arguments of the parties and a careful review of the pleadings and the record before us, we reverse and remand for further proceedings.[2]

## I.

### FACTUAL AND PROCEDURAL HISTORY

On September 4, 2006, Mr. Thomas Loudin was performing maintenance on his 1993 International truck with the assistance of his brother, William Loudin. At some point, William Loudin accidentally backed the truck over Mr. Thomas Loudin. The accident allegedly caused Mr. Thomas Loudin severe and permanent injuries. Mr. Thomas Loudin's truck was insured under a policy issued by National Liability & Fire Insurance Company (hereinafter "National"). After the accident, Mr. Thomas Loudin filed a claim under the Auto Medical Payments provision of the policy. In October 2006, National paid Mr. Thomas Loudin the liability limit of $5,000.00 under the Auto Medical Payments provision of the policy.[3]

In addition to the Auto Medical Payments claim, Mr. Thomas Loudin also filed a claim under the Liability Coverage provision of the policy.[4] This claim was based upon the negligence of William Loudin as a permissive operator of Mr. Thomas Loudin's truck when the accident occurred. After National investigated the claim, it refused to pay Mr. Thomas Loudin's demand under the Liability Coverage provision.

Following National's denial of the liability coverage claim, the Loudins filed a negligence action against William Loudin on September 4, 2008.[5] The complaint also included claims against National, Jack Sergent, D.L.

---

1. The Loudins are husband and wife.

2. This Court acknowledges the contribution of Amicus Curiae, the West Virginia Insurance Federation, which filed a brief with this Court in support of the appellees. We have considered the views of the Amicus Curiae in the decision of this case.

3. The medical payments coverage is not at issue in this case.

4. The Liability Coverage provision had a $1,000,000.00 limit of liability.

5. Legal representation was provided for William Loudin by National.

Thompson, and Consolidated Claim Services, Inc.[6] The complaint asserted claims against National for common law bad faith, breach of the insurance contract, breach of the implied duty of good faith and fair dealing, violations of the Unfair Trade Practices Act, and the tort of outrage.[7]

On September 15, 2009, National settled the claim against William Loudin. National paid the Loudins $150,000.00 to resolve the lawsuit against William Loudin. Thereafter, on December 8, 2009, the Loudins filed an amended complaint that deleted William Loudin as a defendant.[8] In March 2010, National filed a motion for summary judgment. In that motion, National argued that it was entitled to summary judgment because the Loudins were third-party claimants. As such, they were barred as a matter of law from bringing their claims. The Loudins filed a response under Rule 56(f) of the West Virginia Rules of Civil Procedure contending that the motion for summary judgment was precipitous because discovery had not been completed.

By order entered May 27, 2010, the circuit court granted summary judgment in favor of National on the liability theories of common law bad faith, breach of the insurance contract, breach of the implied duty of good faith and fair dealing, and violations of the Unfair Trade Practices Act. The circuit court based its rulings on the grounds that the Loudins were third-party claimants. The circuit court also *sua sponte* determined that National was entitled to summary judgment on the claim for the tort of outrage, because the record failed to show that National's conduct in handling the claim was "so extreme and outrageous as to constitute ... the tort of outrage." From these rulings, the Loudins appeal.

6. Mr. Thomas Loudin's Liability Coverage claim was investigated on behalf of National by Jack Sergent, D.L. Thompson, and Consolidated Claim Services, Inc. These defendants will hereinafter be collectively referred to as "National".

7. The claim asserted in the complaint by Mrs. Loudin was a derivative claim for loss of consortium.

8. William Loudin is not a party to this appeal.

## II.

## STANDARD OF REVIEW

This appeal arises from an order of the circuit court that granted summary judgment in favor of National. We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Our case law also has made clear that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Accord Syl. pt. 2, *Jackson v. Putnam Cnty. Bd. of Educ.*, 221 W.Va. 170, 653 S.E.2d 632 (2007); Syl. pt. 1, *Mueller v. Am. Elec. Power Energy Servs., Inc.*, 214 W.Va. 390, 589 S.E.2d 532 (2003). In other words, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*, 192 W.Va. 189, 451 S.E.2d 755.

With these standard of review principles in mind, we proceed to address the summary judgment ruling of the circuit court.

## III.

## DISCUSSION

In this proceeding, the circuit court provided two separate grounds for granting summary judgment to National. First, the circuit court found that the Loudins' claims for common law bad faith, breach of the insurance contract,[9] breach of the implied duty of good faith and fair dealing, and violations of the West Virginia Unfair Trade Practices Act were precluded because the

9. " 'The duty at issue in a bad faith breach of insurance contract claim is the insurance company's duty to act in good faith and deal fairly with its insured.' " *Noland v. Virginia Ins. Reciprocal*, 224 W.Va. 372, 386, 686 S.E.2d 23, 37 (2009) (quoting *Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 228 (Colo.App.2002)).

Loudins were third-party claimants.[10] Second, the circuit court found, in essence, that no material issue of fact was in dispute on the Loudins' cause of action for the tort of outrage. Therefore, the circuit court ruled that National was entitled to summary judgment on that claim. We will examine the circuit court's rulings separately.

### A. First–Party and Third–Party Bad Faith Claims

■ Before we determine whether the circuit court properly categorized the Loudins as third-party claimants, we first must distinguish between a first-party and a third-party claim. This Court previously has recognized, and we now hold, that:

[A] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim ... filed by the insured.

State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 369, 508 S.E.2d 75, 86 (1998). Accord Noland v. Virginia Ins. Reciprocal, 224 W.Va. 372, 384 n. 34, 686 S.E.2d 23, 35 n. 34 (2009); State of West Virginia ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. 705, 714 n. 4, 601 S.E.2d 25, 34 n. 4 (2004); State ex rel. Brison v. Kaufman, 213 W.Va. 624, 630, 584 S.E.2d 480, 486 (2003); State ex rel. Med. Assurance of West Virginia, Inc. v. Recht, 213 W.Va. 457, 471 n. 13, 583 S.E.2d 80, 94 n. 13 (2003). The parties in this proceeding do not dispute the fact that West Virginia recognizes the right of an insured first-party to bring a bad faith cause of action against his/her insurer under the common law and the West Virginia Unfair Trade Practices Act. See Syl. pt. 1, Morton v. Amos–Lee Secs., Inc., 195 W.Va. 691, 466 S.E.2d 542 (1995) ("There is a private cause of action for a violation of W. Va.Code 33–11–4(1)(a) (1985), of the West Virginia Unfair Trade Practices Act."); Hayseeds, Inc. v. State Farm Fire & Cas., 177 W.Va. 323, 352 S.E.2d 73 (1986) (holding that a common law duty of good faith and fair dealing runs from insurer to its insured); Syl. pt. 5, Mutafis v.

Erie Ins. Exch., 174 W.Va. 660, 328 S.E.2d 675 (1985) ("West Virginia law permits a private cause of action for violation of W. Va.Code, 33–11–4(3) and (5)."); Syl. pt. 2, in part, Jenkins v. J.C. Penney Cas. Ins. Co., 167 W.Va. 597, 280 S.E.2d 252 (1981) ("An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va.Code, 33–11–4(9)[.], overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden, 192 W.Va. 155, 451 S.E.2d 721 (1994)").

The decision in Gaughan also noted that "[a] third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor." Gaughan, 203 W.Va. at 369, 508 S.E.2d at 86. Accord Noland v. Virginia Ins. Reciprocal, 224 W.Va. 372, 384 n. 34, 686 S.E.2d 23, 35 n. 34 (2009); State of West Virginia ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. 705, 714 n. 4, 601 S.E.2d 25, 34 n. 4 (2004); State ex rel. Brison v. Kaufman, 213 W.Va. 624, 630, 584 S.E.2d 480, 486 (2003); State ex rel. Med. Assurance of West Virginia, Inc. v. Recht, 213 W.Va. 457, 471 n. 13, 583 S.E.2d 80, 94 n. 13 (2003). Prior to the enactment of W. Va.Code § 33–11–4a (2005) (Repl.Vol.2006), this Court recognized a statutory bad faith cause of action by a third-party claimant against a tortfeasor's insurer. See Klettner v. State Farm Mut. Auto. Ins. Co., 205 W.Va. 587, 519 S.E.2d 870 (1999) (third-party bad faith claim); State ex rel. State Farm Fire & Cas. Co. v. Madden, 192 W.Va. 155, 451 S.E.2d 721 (1994) (same). However, in 2005 the legislature expressly prohibited statutory third-party bad faith causes of actions against insurers under W. Va.Code § 33–11–4a. See W. Va.Code § 33–11–4a(a) (2005) (Repl.Vol.2006) (indicating that "[a] third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice");[11] State ex rel. Nationwide Mut. Ins.

---

10. For purposes of this discussion we will refer to the legal theories collectively as "bad faith" claims.

11. Pursuant to W. Va.Code § 33–11–4a(b) (2005) (Repl.Vol.2006), a third-party claimant may file an administrative complaint against an insurer with the West Virginia Insurance Commissioner.

*Co. v. Kaufman,* 222 W.Va. 37, 44 n. 8, 658 S.E.2d 728, 735 n. 8 (2008) ("[P]ursuant to W. Va.Code § 33–11–4a (2005), the Legislature abolished a third-party bad faith cause of action against insurers."). Moreover, prior to the enactment of W. Va.Code § 33–11–4a, this Court held that no common law bad faith cause of action existed by a third-party claimant against an insurer. *See* Syl., *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893 (1998) ("A third party has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty."). *But see* Syl. pt. 8, *Michael v. Appalachian Heating, LLC,* 226 W.Va. 394, 701 S.E.2d 116 (2010) ("The prohibition of a third-party lawsuit against an insurer under W. Va.Code § 33–11–4a(a) (2005) (Repl.Vol. 2006), does not preclude a third-party cause of action against an insurer under W. Va. Code § 5–11–9(7)(A) (1998) (2006) of the West Virginia Human Rights Act.").

In the instant proceeding, the circuit court relied upon two grounds to hold that the Loudins were third-party claimants: (1) an administrative rule defining first-party and third-party, and (2) cases from other jurisdictions. We will analyze both grounds separately.

**1. Administrative rule defining first-party and third-party.** The circuit court found that the Loudins were third-party claimants under the definition of first-party and third-party claimants found in an administrative rule promulgated by the West Virginia Insurance Commissioner. Under W. Va. C.S.R. § 114–14–2.3 (2006), the Commissioner has defined a first-party claimant, in part, as follows:

> "First-party claimant" or "Insured" means an individual … asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract.

A third-party claimant is defined under W. Va.C.S.R. § 114–14–2.8, in part, as follows:

> "Third-party claimant" means any individual … asserting a claim against any individual … insured under an insurance policy or insurance contract of an insurer.

*See* W. Va.Code § 33–11–4a(j)(1) (providing similar definition for third-party claimant).

We have recognized that "[s]tatutes and administrative regulations are governed by the same rules of construction." *Vance v. West Virginia Bureau of Emp't. Programs/Elkins Job Serv.,* 217 W.Va. 620, 623, 619 S.E.2d 133, 136 (2005) (internal quotations and citation omitted). Under a fundamental rule of statutory construction, "[w]hen a [rule] is clear and unambiguous and the [drafter's] intent is plain, the [rule] should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the [rule]." Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959). The definitions for first-party and third-party claimants provided by the Commissioner are unambiguous. Further, although the definitions are worded differently from that used in our case law, the definitions are consistent with our case law definitions of first-party and third-party claimants.

The trial court found that under the definition of third-party claimant in W. Va.C.S.R. § 114–14–2.8, the Loudins were third-party claimants. We agree that, under the Commissioner's rule and this Court's definition of third-party claimant, the Loudins may be characterized as third-party claimants. This is to say that, insofar as National took the position that William Loudin was a non-named insured or beneficiary under the policy [12] when he caused injury to Mr. Thomas Loudin, the Loudins could be considered third-party claimants. However, we equally find that under the definition of first-party claimant provided by the Commissioner's rule and this Court's definition of the same, the Loudins also fall within the definition of first-party claimant. In other words, there is no dispute that Mr. Thomas Loudin is the named insured on the policy in question and

---

**12.** The language in the policy indicates that a permissive user of the truck would be considered an insured.

that he filed a claim under that policy. Thus, under the unique facts of this case, the Loudins' bad faith cause of action has characteristics of both first-party and third-party bad faith claims.

The issue of a bad faith claim having characteristics of both a first-party claim and a third-party claim was addressed by the appellate court in *Bonenberger v. Nationwide Mutual Insurance Co.*, 791 A.2d 378 (Pa.Super.Ct.2002). In *Bonenberger*, the plaintiff was injured by a tortfeasor in an automobile accident. The plaintiff thereafter obtained the policy limits from the tortfeasor's insurer. The plaintiff subsequently filed a claim with his insurer for underinsured motorist (hereinafter "UIM") coverage. The insurer rejected the amount sought by the plaintiff. The case then proceeded to be heard by a board of arbitrators who ruled in favor of the plaintiff. After the award from the arbitrators, the plaintiff filed a bad faith action against his insurer because of the handling of the plaintiff's UIM claim. The case was tried before the court without a jury. The trial court awarded a verdict in favor of the plaintiff, and the insurer appealed. One of the issues raised by the insurer was that the trial court applied the duty of care applicable to a first-party bad faith claim, when the plaintiff's claim should have been decided under the lower standard used for a third-party claimant. The appellate court acknowledged that, under the laws of Pennsylvania, a UIM claim has characteristics of a third-party claim. However, the appellate court also determined that the plaintiff's claim had characteristics of a first-party claim. The appellate court then concluded that, in this situation, the plaintiff's claim should be litigated under the heightened standard for a first-party claim. The appellate court addressed the issue succinctly as follows:

> Nationwide argues the trial court's finding of bad faith was premised upon an erroneous view of the duties an insurer owes to its insured who makes a UIM claim.... With respect to the relationship between the parties, Nationwide points to the trial court's statement that a heightened duty of good faith was due Nationwide's insured in a first party claim. The court remarked that the duty of good faith in a first party claim arises out of the contractual nature of the parties' relationship. Nationwide submits that a UIM claim has first party components, in that the insured claimant is often making a direct claim against its own insurer, but these claims are also like third party claims because the parties may each have their own positions on the value of the claim. Nationwide is correct in recognizing this. An individual making a UIM claim is making a first party claim, however the valuation of that claim may follow traditional third party claimant concepts. This said, we perceive of no error in the trial court's analysis. An insurance company does owe its insured a duty of good faith and fair dealing, and whether a UIM [claim] is handled much like a third party claim for valuation purposes, the insurer remains committed to engage in good faith with its insured.

*Bonenberger*, 791 A.2d at 381.

In the instant case, we are troubled by the circuit court's decision to cast the Loudins as third-party claimants, when they also fall under the definition of first-party claimants. This Court has made clear that, with respect to purchasers of insurance,

> A policyholder buys an insurance contract for peace of mind and security, not financial gain, and certainly not to be embroiled in litigation. The goal is for all policyholders to get the benefit of their contractual bargain: they should get their policy proceeds promptly without having to pay litigation fees to vindicate their rights.

*Miller v. Fluharty*, 201 W.Va. 685, 694, 500 S.E.2d 310, 319 (1997) (footnote omitted). "We adopted this rule in recognition of the fact that, when an insured purchases a contract of insurance, he buys insurance-not a lot of vexatious, time-consuming, expensive litigation with his insurer." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 329, 352 S.E.2d 73, 79 (1986).

■ The observations expressed in *Miller* and *Hayseeds* echo a firm public policy of this State to hold insurers accountable in a court of law when they wrongfully deny cov-

erage to premium-paying insureds. *See Taddei v. State Farm Indem. Co.*, 401 N.J.Super. 449, 951 A.2d 1041, 1047 (App.Div.2008) (noting that "insureds should have a remedy under first-party policies in which the insurer breaches its duty to its insured by acting in bad faith"). The circuit court's rejection of the Loudins as first-party claimants effectively terminated the Loudins' right to seek legal redress for alleged improper handling of Mr. Thomas Loudin's claim. To be clear, in this proceeding, there is no evidence in the record to show that the tortfeasor, William Loudin, purchased the insurance policy at issue. The insurance policy submitted in the record of this case shows only the name of Mr. Thomas Loudin as the party procuring the policy. This is the central and controlling point that the trial court failed to consider when the court decided whether to apply the label third-party or first-party to the Loudins. As pointed out by another court with respect to a third-party claimant:

A third party claimant has no contract with the insurer ..., has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers ... with regard to their insureds.

*Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 149 (Tex.1994). It is fundamentally unfair to hold that when Mr. Thomas Loudin filed his administrative claim with National, he was not owed a duty of good faith and fair dealing in resolving that claim as a first-party claimant. Such an outcome essentially treats Mr. Thomas Loudin as a nonpremium paying claimant seeking coverage under a third-party's policy, when he, in fact, paid the premiums for the policy in question. Compare *Marshall v. Saseen*, 192 W.Va. 94, 100, 450 S.E.2d 791, 797 (1994) ("First party insurance means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits."), with *Shannon R. Ginn Constr. Co. v. Reliance Ins. Co.*, 51 F.Supp.2d 1347, 1351 n. 6 (S.D.Fla.1999) ("A third-party action is a claim by a non-insured against the insurer of

another, often a tortfeasor."). Consequently, we now hold that, when a named policyholder files a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handling of the policyholder's claim.

**2. Cases from other jurisdictions relied upon by the trial court.** In addition to erroneously relying upon the Commissioner's definition of a third-party claimant, the trial court also cited to six cases from other jurisdictions as a basis for characterizing the Loudins as third-party claimants. All of the cases in question involved underlying automobile accident injury claims by one spouse against the other spouse. *See Smith v. Allstate Ins. Co.*, 202 F.Supp.2d 1061 (D.Ariz. 2002) (wife sued husband); *Wilson v. Wilson*, 121 N.C.App. 662, 468 S.E.2d 495 (1996) (wife sued husband); *Gillette v. Estate of Gillette*, 163 Ohio App.3d 426, 837 N.E.2d 1283, 1288 (2005) (wife sued husband); *Rumley v. Allstate Indem. Co.*, 924 S.W.2d 448 (Tex.App. 1996) (wife sued husband); *Sperry v. Sperry*, 990 P.2d 381 (Utah 1999) (wife sued husband for wrongful death of their son in an auto accident); *Herrig v. Herrig*, 844 P.2d 487 (Wyo.1992) (husband and children sued wife/mother). Additionally, in each case, the plaintiff spouse sued the insurer of the family's vehicle for bad faith settlement practices. Finally, the courts in each case treated the plaintiff spouse as a third-party claimant, even though each of the plaintiffs was either a named insured on the policies or the policies had been purchased with marital funds. The justification for this treatment was summarized by the court in *Gillette* as follows:

Although no court in Ohio has addressed this issue, at least five courts in other jurisdictions have done so. All five courts concluded that an insured spouse must be treated as a third-party claimant when seeking benefits based upon a coinsured's liability coverage. These courts recognized that each insured spouse stood in the position of a typical third-party claimant seeking liability coverage. That stance forced the coinsured to claim the protection the insurer promised to him in the

policy (i.e., to pay for the damages for which he was liable) and placed the insured spouse in an antagonistic position to both the coinsured and the insurer.

From this antagonistic position, the insured spouse did not seek benefits based upon a duty the insurer owed directly to her. Rather, the insured spouse sought benefits based upon the duty the insurer owed to the coinsured to pay for damages for which the coinsured was liable. Although the insured spouse might ultimately benefit from a claim under her coinsured's liability coverage, that benefit flowed from the insurer's compliance with the duty owed to the coinsured, not any duty owed to the insured spouse. Accordingly, because the insurer did not owe any contractual duty to the insured spouse to pay her liability benefits, the insurer did not owe any overlying duty of good faith in handling the insured spouse's claims for liability benefits.

Moreover, these courts determined that requiring the insurer to owe a duty of good faith to an insured spouse would create a conflict of interest for the insurer. The insurer would simultaneously owe inconsistent duties to both the insured spouse and the coinsured, making the insurer an almost certain target for a claim of breach of one of these duties, in addition to the claim for the underlying negligence.

*Gillette*, 837 N.E.2d at 1288 (internal quotations and citations omitted).

In this appeal, National urges this Court to adopt and apply the reasoning of *Gillette* and its progeny to the facts of this case. We decline to do so for two reasons.

First, the reasoning of *Gillette* and its progeny elevate form over substance. *Gillette* and its progeny begin their analysis from the standpoint of the actual commencement of the lawsuits against the defendant spouses. It is only by looking at the bad faith claims from this point that issues of divided loyalties come into play, *i.e.*, the insurers' duty to the insured tortfeasors. However, as in the case *sub judice*, the facts

of *Gillette* and its progeny reveal that the plaintiffs in each case filed administrative claims for coverage prior to filing the lawsuits against the tortfeasors. At the point in time at which the plaintiffs filed their administrative claims with the insurers, the tortfeasors played no role in investigating or assessing the value of the claims; nor were the tortfeasors personally obligated to pay the plaintiffs anything because no judgment had been obtained against them. The obligation of payment at that point rested solely with the insurers.[13] Thus, at the administrative claims level, the real parties in interest were only the plaintiffs and their insurers. Viewing the controversies from this standpoint reveals the classic definition of a first-party claim, *i.e.*, the plaintiffs in *Gillette* and its progeny were insureds filing administrative claims seeking benefits under policies they, themselves, had purchased or policies that had been purchased using marital funds. To say that the plaintiffs in those cases were not first-party claimants at that stage is simply wrong. The duty owed to the plaintiffs at that point was that of first-party claimants, not third-party claimants. The subsequent filing of lawsuits against the tortfeasors and insurers did not magically transform the pre-suit bad faith settlement into third-party bad faith settlement. In the final analysis, the insurers in *Gillette* and its progeny did not have divided loyalties until after the plaintiffs filed their actions against the insured tortfeasors. At that point, the insurers were obligated to protect the interests of the insured tortfeasors. Prior to that point, the insurers were only protecting themselves from first-party claims. *See Weese v. Nationwide Ins. Co.*, 879 F.2d 115, 118 (4th Cir.1989) ("[A]ll first party claims are adversarial. The insurer wishes to minimize payment and the insured wishes to maximize it.").

The second reason that we decline to follow *Gillette* and its progeny is that those cases are factually distinguishable from the instant case. In *Gillette* and its progeny, both the plaintiffs and the defendant spouses actually procured the insurance. As we have

---

**13.** *See Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 259 (1981) ("[I]n the standard liability insurance contract the insured surrenders completely the right to control the settlement ... within the limits of the insurer's exposure.").

previously noted in this opinion, the defendant tortfeasor herein, William Loudin, did not purchase the insurance policy at issue. Mr. Thomas Loudin purchased the insurance. Thus, even if we were to conclude, which we do not, that *Gillette* and its progeny correctly characterized bad faith claims by co-insured spouses as third-party claims, we would not extend this holding to a premium-paying policyholder involved in an action against a nonnamed beneficiary of that policy. We therefore conclude that the circuit court committed error in relying upon *Gillette* and its progeny to find that the Loudins were third-party claimants.

### B. Summary Judgment on the Claim for Tort of Outrage

The circuit court's summary judgment order ruled on the merits of the Loudins' claim for the tort of outrage and found in favor of National. The Loudins argue that National's motion for summary judgment did not include their claim for the tort of outrage. Therefore, it was improper for the circuit court to decide the issue. National's appeal brief does not address the Loudins' contention; instead, National merely argues as to why summary judgment was appropriate on the merits of the claim.

We begin by noting that the tort of outrage is also called intentional infliction of emotional distress. *See Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 374, 504 S.E.2d 419, 424 (1998) ("Intentional or reckless infliction of emotional distress, also called the 'tort of outrage,' is recognized in West Virginia as a separate cause of action."). This Court has held that a plaintiff must establish four elements:

It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so

severe that no reasonable person could be expected to endure it.

Syl. pt. 3, in part, *Travis, id.* We also noted in *Travis* that "[w]hether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Travis*, 202 W.Va. at 378, 504 S.E.2d at 428.

■ Under *Travis*, when the merits of the tort of outrage are presented to the trial court on a motion for summary judgment, the court has authority to decide as a matter of law whether a defendant's conduct may reasonably be construed as outrageous. The Loudins argue that the trial court could not decide whether summary judgment was appropriate on their claim for the tort of outrage because National never sought summary judgment on that claim. We disagree with part of the Loudins' argument. Although National's summary judgment memorandum and reply memorandum referenced to the tort of outrage only in passing, at best, the trial court could reasonably conclude that National was also seeking summary judgment on that claim.

■ However, the basis upon which the circuit court granted summary judgment on the tort of outrage claim was not argued in National's motion. The only grounds upon which National sought summary judgment was that, as third-party claimants, the Loudins could not sue National. The circuit court's summary judgment order did not decide the issue of whether the Loudins could assert a claim for the tort of outrage as purported third-party claimants. Instead, the circuit court *sua sponte* invoked an alternative ground for granting summary judgment on the claim for the tort of outrage by rendering a ruling on the merits of the claim. We find this to be error.

■ It has been noted, and we so hold, that, as a general rule, "a trial court may not grant summary judgment *sua sponte* on grounds not requested by the moving party." Franklin D. Cleckley, Robin Jean Davis & Louis J. Palmer, Jr., *Litigation Handbook on the West Virginia Rules of Civil Procedure*, § 56(c), at pg. 214 (Cum. Supp.2011). An exception to this general

rule exists when a trial court provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is *sua sponte* considering granting summary judgment. *See Lozano v. Ocwen Fed. Bank,* 489 F.3d 636, 641 (5th Cir.2007) ("[A] district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party. An exception exists when the district court gives a party ten days notice; in those situations a court may grant summary judgment *sua sponte* on grounds not urged in a pending motion."). *See also Carr v. Michael Motors, Inc.,* 210 W.Va. 240, 249, 557 S.E.2d 294, 303 (2001) ("Our cases are clear that a circuit court may not grant summary judgment on a claim 'without permitting the adverse party a reasonable opportunity to submit pertinent material[.]' " (quoting *Kopelman & Assocs., L.C. v. Collins,* 196 W.Va. 489, 494, 473 S.E.2d 910, 915 (1996))).

In the instant proceeding, the trial court failed to provide the Loudins with notice and an opportunity to be heard before it *sua sponte* granted summary judgment on the merits of the tort of outrage. We find that the failure to provide such notice and opportunity to be heard was an abuse of discretion.

## IV.

## CONCLUSION

For the reasons stated above, this Court finds that the circuit court erred in granting summary judgment in favor of National. Accordingly, this case is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice, dissenting:
(Filed Oct. 24, 2011)

In a radical departure from our jurisprudence and wholly without support from other courts, the majority opinion creates a duty of good faith and fair dealing in the absence of an underlying contractual duty. In doing so, the majority opinion places insurance companies in the impossible position of owing a duty of good faith and fair dealing to two potentially antagonistic parties at the same time. For these reasons, I am compelled to dissent.

The majority bases its opinion solely on the fact that Thomas Loudin was the purchaser of the insurance policy in this case. This analysis is superficial and incomplete. An insurance policy contains both first-party and third-party coverages. This case involves a liability insurance provision which is third-party coverage.[1]

Authorities have explained the distinction between first-party and third-party coverages as follows:

An insurance policy may contain both first party property and third party liability coverages, and these coverages differ in their focus. "First-party coverage" pertains to loss or damage sustained by an insured to its property, and under such a policy, the insured receives the proceeds when the damage occurs. If the insurer's duty to defend and pay runs to a third-

---

1. The liability portion of the insurance policy at issue provides, in part, as follows:
   **SECTION II  LIABILITY COVERAGE**
   **A.  Coverage**
   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
   \*    \*    \*    \*    \*    \*
   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
   **1.  Who Is An Insured**
   The following are "insureds".
   **a.**  You for any covered "auto".
   **b.**  Anyone else while using with your permission a covered "auto" you own, hire or borrow[.]

party claimant who is paid according to a judgment or settlement against the insured, then the insurance is classified as "third-party insurance."

Once an occurrence or accident has happened and the third party has been injured by the insured's conduct, liability coverage becomes implicated.

46 C.J.S. *Insurance* § 1239, in part, (2007) (footnotes omitted). Commentators further have indicated that

In many insurance contexts, ranging from principles of causation to the varied post-loss duties addressed here, courts recognize the conceptual and practical differences between "first-party" and "third-party" insurance.

"First-party" insurance is a contract between the insurer and the insured to protect the insured from its own actual losses and expenses. Property insurance, fidelity insurance, and medical/health insurance are all examples of first-party insurance.

"Third-party" insurance is a contract to protect the insured from losses resulting from actual or potential liability to a third party. This protection may involve defending the insured from suit, paying or settling a claim against the insured, or a combination of both. Liability insurance is third-party insurance.

*Couch On Insurance 3d* § 198:3 (2005) (footnotes omitted).

The courts of other jurisdictions uniformly recognize that liability insurance constitutes third-party coverage. *See e.g., Sibothan v. Neubert*, 168 S.W.2d 981, 983 (Mo.Ct.App. 1943) ("third party coverage ... is ... insurance against the liability of the insured for injury which has been sustained by some third person through negligence in the operation of the automobile"); *U.S. Fidelity and Guaranty Co. v. Nationwide Mut. Ins. Co.*, 110 Ohio App. 363, 163 N.E.2d 46, 54 (Ohio Ct.App.1959) (same); *Hartford Acc. & Indem. v. Aetna Cas.*, 164 Ariz. 286, 792 P.2d 749, 752 n. 1 (1990) ("Third party coverage comes into play when an insurance carrier contracts to compensate its insured for liability to third parties. First party coverage involves liability policies which directly benefit the insured."); *Kromer v. Reliance Ins.*

*Co.*, 450 Pa.Super. 631, 677 A.2d 1224, 1230 n. 3 (1996) ("A liability policy is commonly known and referred to as a[sic] third party coverage. There are three parties, the insurance company, the insured and the claimant.... [I]f the insured is liable for whatever is claimed, the insurance company will pay on behalf of the insured to the claimant the damages sought up to the liability limits" (citation omitted)); *Lynch ex rel. Lynch v. Am. Family Mut.*, 626 N.W.2d 182, 188 (Minn.2001) ("[l]iability insurance is third-party coverage, meaning that it pays for damage the insured is legally obligated to pay another person, a third party, for bodily injury"); *American Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 581 (Iowa 2004) ("Liability coverage involves third-party coverage and exists as a form of indemnification to protect the insured from paying for damages the insured causes to others."); *Black v. Allstate Ins. Co.*, 100 P.3d 1163, 1168 (Utah 2004) ("first-party coverage[ ] ... refers to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured, and third-party coverage[ ] ... refers to an agreement wherein the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability up to the specified dollar limit." (Internal quotation marks and citation omitted)).

Liability coverage involves three parties: the insurance company, the insured, and the claimant. The insured is the party whom the insurer agrees to defend and indemnify in a suit brought by the third-party claimant. The third-party claimant is the injured person who asserts a claim against the insured for damages allegedly caused by the insured's conduct. The insured under the liability coverage in this case is William Loudin who was a permissive user of the covered automobile. Thomas Loudin sued William Loudin for bodily injuries allegedly caused by William Loudin's negligence. The insurer, National, provided a defense to William Loudin and paid a settlement on his behalf to Thomas Loudin per the terms of the liability coverage. It is evident then that even though Thomas Loudin is the policyholder,

he is not a first-party insured but rather a third-party claimant in this case.

The fact that Thomas Loudin is a third-party claimant is further supported by the legislative rules of the Insurance Commissioner. According to 114 CSR § 14–2.3,

"First-party claimant" or "Insured" means an individual, corporation, association, or partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract.

On the other hand,

"Third-party claimant" means any individual, corporation, association, partnership or other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity under an insurance policy or insurance contract of an insurer.

114 CSR § 14–2.8. The majority wrongly indicates that Thomas Loudin falls within the above definition of a first-party claimant. He does not. Thomas Loudin did not assert a right to payment under the insurance policy arising out of the occurrence of the contingency or loss covered by the policy. Instead, he asserted a claim against William Loudin who had liability coverage under the National policy. It is only through William Loudin that Thomas Loudin is able to collect under his insurance policy. This places Thomas Loudin squarely within the definition of a third-party claimant.

My conclusion that Thomas Loudin is a third-party claimant under the facts of this case is supported by every other court that has addressed this specific issue. For example, in the case of *Gillette v. Estate of Gillette*, 163 Ohio App.3d 426, 837 N.E.2d 1283 (2005), Joseph M. Gillette wrecked his minivan resulting in an injury to his wife. At the time of the accident, Mr. Gillette's minivan was covered by a policy issued by Nationwide. The declarations page of the policy named Joseph as the only named insured. Although, Mrs. Gillette was not the named insured, as the spouse of the named insured, she was an insured under the policy. After Mrs. Gillette rejected Nationwide's settlement offer, she filed a complaint against Nationwide, asserting bad faith on the part of the insurer for refusing to pay the full amount of insurance proceeds owed to her under the policy. She also asserted a negligence claim against her husband for causing the accident in which she was injured. The issue on appeal was whether a third-party claimant who is also an insured may bring a claim for bad faith against an insurer. In deciding this issue, the court in Gillette reasoned as follows:

From this antagonistic position, the insured spouse did not seek benefits based upon a duty the insurer owed directly to her. Rather, the insured spouse sought benefits based upon the duty the insurer owed to the coinsured to pay for damages for which the coinsured was liable. Although the insured spouse might ultimately benefit from a claim under her coinsured's liability coverage, that benefit flowed from the insurer's compliance with the duty owed to the coinsured, not any duty owed to the insured spouse. Accordingly, because the insurer did not owe any contractual duty to the insured spouse to pay her liability benefits, the insurer did not owe any overlying duty of good faith in handling the insured spouse's claims for liability benefits.

*Gillette*, 837 N.E.2d at 1288. The court in *Gillette* concluded,

although [Mrs. Gillette] is an insured under the Nationwide policy, where she seeks liability coverage for the negligence of the named insured-her husband-she stands in the shoes of a third party claimant who is not owed any contractual duty by the insurer. Thus, we conclude that [Mrs. Gillette] is barred from asserting a claim for bad faith for Nationwide's delay in paying her benefits pursuant to the "Auto Liability" section of the policy.

837 N.E.2d at 1289. *See also, Wilson v. Wilson*, 121 N.C.App. 662, 468 S.E.2d 495 (1996); *Rumley v. Allstate Indemnity Co.*, 924 S.W.2d 448 (Tex.App.1996); *Smith v. Allstate Ins. Co.*, 202 F.Supp.2d 1061 (D.Ariz. 2002). The reasoning in these cases also applies where the third-party claimant was a named insured under the subject insurance

policy as in the instant case. *See Herrig v. Herrig,* 844 P.2d 487 (Wyo.1992); *Sperry v. Sperry,* 990 P.2d 381 (Utah 1999).

Despite the majority's assertions to the contrary, the reasoning in *Gillette* and its progeny is applicable to the instant case. Thomas Loudin did not seek benefits based upon a duty that National owed directly to him. Instead, Thomas Loudin sought benefits based upon the duty that National owed to William Loudin as the insured permissive user to pay damages for which William Loudin was liable. The benefit to Thomas Loudin flowed from National's compliance with the duty owed to William Loudin, not any duty owed under the liability coverage to Thomas Loudin. Therefore, because National did not owe any contractual duty to Thomas Loudin under the liability coverage, National did not owe any underlying duty of good faith and fair dealing in handling Thomas Loudin's claim for liability benefits.

Further, in addition to my concern with the majority's incorrect application of legal precedent, I am also troubled by the practical effects of the majority opinion. Unfortunately, the majority opinion creates a real conflict of interest for insurance companies in cases like this one. According to the majority, insurers now owe a duty of good faith and fair dealing to two potentially antagonistic parties in a liability dispute. First, the insurer has a duty of good faith and fair dealing to the permissive user under its policy. *See Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990) (recognizing an insurer's duty to attempt in good faith to negotiate a settlement with an injured third party and to accord interests and rights of the insured at least as great a respect as its own); *Charles v. State Farm Mut. Auto. Ins. Co.,* 192 W.Va. 293, 298, 452

S.E.2d 384, 389 (1994) (explaining that "[a]lthough [the permissive user of the covered auto] was not the original purchaser of the insurance, he was nonetheless an 'insured' under the policy and is, therefore, entitled to the protections of the *Shamblin* doctrine"). According to the majority, if an insurer allegedly fails to exercise good faith in procuring a settlement with a third-party policyholder claimant, *both* the permissive user and the third-party policyholder claimant can pursue a bad faith claim against the insurer. In addition, if the insurer rolls over in its defense and indemnification of the permissive user in favor of the policyholder claimant, the policyholder claimant can maintain a first-party bad faith action against the insurer on the basis that the insurer wrongly failed to defend the permissive user, causing an increase in the policyholder's experience rating and resulting in future higher premiums to the policyholder.

In sum, the majority has taken the unprecedented step of creating a duty of good faith in the absence of an underlying contractual obligation. This novel free-floating duty places insurance companies in the untenable position of owing a duty of good faith and fair dealing to two potentially antagonistic parties at the same time. Finally, it increases exponentially the potential number of bad faith claims against insurers arising from their handling of liability claims where the policyholder is also a third-party claimant. For these reasons, I respectfully dissent.