# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michelle Effron Miller, Administratrix**
**of the Estate of Justin Taylor Creed, deceased,**
**Plaintiff Below, Petitioner**

**FILED**

**May 20, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0390** (Marion County 12-C-262)

**The Board of Governors of Fairmont State University,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Michelle Effron Miller, Administratrix of the Estate of Justin Taylor Creed, by counsel Stephen P. Meyer and Sean W. Cook, appeals the Circuit Court of Marion County's "Final Opinion and Order Granting Defendant's Motion for Summary Judgment," entered on April 9, 2015. Respondent Board of Governors of Fairmont State University, by counsel Richard M. Yurko, Jr., Rodney L. Bean, Monte L. Williams, and Chelsea V. Prince, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

This is an appeal from the circuit court's order granting summary judgment in favor of respondent, dismissing petitioner's suit that she filed after her son died from an overdose in one of respondent's dormitories. Petitioner is the mother of Justin Creed, who was a student at respondent's affiliate college, Pierpont Community and Technical College ("Pierpont"). Mr. Creed died two days after arriving on campus when he overdosed on his prescription medications (oxycodone and alprazolam). Petitioner filed a wrongful death suit claiming that her son's death was caused by respondent's negligence.[1] After the close of discovery, respondent moved for summary judgment. After full briefing by the parties, the circuit court held a hearing on January 23, 2015, and by order entered on April 9, 2015, granted respondent's motion and dismissed petitioner's suit.

---

[1] Petitioner also raised claims of breach of contract and promissory estoppel.

The salient facts are as follows: Mr. Creed enrolled in Pierpont in the Fall of 2010. He suffered from anxiety, depression, and chronic migraines, for which he was prescribed oxycodone and alprazolam.[2] Petitioner advised Pierpont officials of her son's condition and his required medications prior to his enrollment by email and in person during the new-student orientation. Pierpont generally assured petitioner that Mr. Creed would be given the opportunity to take advantage of appropriate accommodations once it could determine what accommodations would be needed. Pierpont also advised petitioner to bring a safe in which to store Mr. Creed's medications, given that they were narcotics. On move-in day, August 19, 2010, petitioner and Mr. Creed completed an "Emergency Notification Form" as required by the residential housing staff. In the field designated for Mr. Creed's "Special Health Concerns," petitioner wrote only "Migraines." Neither petitioner nor Mr. Creed provided residential housing staff with any other information regarding his condition or medications.

Around 2:00 a.m. on the following day, August 20, 2010, Mr. Creed's roommate came into their dormitory room to find Mr. Creed passed out at his desk and surrounded by drug paraphernalia. Later that morning, the roommate expressed concern about the incident to the resident assistant assigned to their room, who immediately advised the resident director[3] for the dormitory. Based on the roommate's report, it was determined that a "welfare check" was warranted.

That same day, around 7:45 a.m., the resident assistant and resident director visited Mr. Creed's room. Mr. Creed answered the door and was observed to have a spot of vomit or slobber on his shirt collar, as if he may have been sick the night before and had not had a chance to clean himself given the early morning visit. Mr. Creed was sluggish and his speech was slightly slurred, but he was coherent and his speech improved as the conversation continued. Mr. Creed allowed the resident assistant and resident director to visually inspect the room; no illegal drugs or paraphernalia were observed. When asked about the drug paraphernalia that the roommate reported to have seen, Mr. Creed advised that he was prescribed Xanax and Hydrocodone, which he kept in his safe. Mr. Creed did not permit them to access the safe, but did permit them to view his pill bottles, which he removed from the safe himself. The resident director confirmed that the medications were legally prescribed. Having observed no medical emergency or policy violation, the resident assistant and resident director left the room. The entire visit lasted about fifteen minutes.

---

[2] These conditions had interfered with Mr. Creed's academics while he was in high school in Pennsylvania, resulting in an "Individualized Education Plan" that entitled him to certain accommodations under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 through 1482. However, the parties note that the requirements of the IDEA are not legally binding at the post-secondary level.

[3] The resident director is a full-time, non-student employee who manages the resident assistants, relays important information to respondent's administration, and identifies students who violate respondent's policies.

The resident assistant prepared a "concern" report documenting the roommate's report and the subsequent welfare check. The resident assistant concluded that Mr. Creed's vomit and initial sluggishness "could have been caused by a migraine at the time and/or a common reaction to [his] medications." At a meeting a few hours later, the report was shared with respondent's campus police, who took no action.

Meanwhile, petitioner had remained in the Fairmont area after departing the respondent's campus. Before leaving for her home in Pennsylvania, she called Mr. Creed and he reported that he was doing fine. Petitioner left for her home. However, during a telephone call later that evening, Mr. Creed told his mother that he had just returned from a party, was extremely sick, and was vomiting uncontrollably. Petitioner urged Mr. Creed to go to the hospital or inform the residence staff, but he refused, stating "he was fine." Mr. Creed made petitioner promise not to contact anyone at Pierpont to check on him, and she complied.

On the following day, August 21, 2010, petitioner attempted to contact Mr. Creed several times around 1:00 p.m., but was unable to reach him. Around 2:00 pm., petitioner was able to reach the student-employee who worked the front desk of the dormitory, who relayed a message to the resident assistant to check on Mr. Creed. The resident assistant knocked on Mr. Creed's door and yelled his name, but no one answered. He tried again about an hour later, and after receiving no response, left a note on the door asking Mr. Creed to contact petitioner. Around 5:00 p.m., having not heard from her son, petitioner contacted the front desk again. Another resident assistant knocked on Mr. Creed's door with no response. The note from earlier in the day was still on the door. This information was relayed to petitioner.

At this point, petitioner requested to speak directly with the resident assistant so that he could open the door. Upon entering the room, the resident assistant found Mr. Creed on his bed; his body was stiff, and he had no pulse. The resident assistant called petitioner crying and informed her that "something had happened to Justin." The resident director subsequently informed petitioner that Mr. Creed had died. A post-mortem examination determined the cause of death to be a fatal overdose of oxycodone and alprazolam.

In its order granting respondent's motion for summary judgment, the circuit court first engaged in an extensive discussion of the threshold question of whether respondent owed a duty to Mr. Creed. With respect to respondent's duty, the circuit court concluded, in part, as follows:

> Ultimately, the Court believes that a university does owe a contextual duty of care toward its resident students – a duty that arises out of the "special relationship" shared between them. While universities no longer stand in loco parentis toward their students, they are certainly more than mere landlords. . . . In short, colleges have fostered a reasonable expectation in "parents, students, and the general community . . . that reasonable care will be exercised to protect students." [citation omitted]. It would be at odds with contemporary norms to wholly absolve universities from any duty whatsoever to respond reasonably – even affirmatively – to foreseeable dangers. . . . For these reasons, the Court formulates the university's duty toward its resident students as a general obligation to maintain a campus environment free from foreseeable harm.

3

The circuit court determined that whether a particular plaintiff's injuries were foreseeable to a particular defendant remains a consideration for the subsequent question of breach, which, the court observed, is typically a question for the jury. However, the circuit court determined that the record as developed could not support a finding that respondent breached its duty. The court stated as follows:

> While an emergent situation was certainly foreseeable following the initial report by Mr. Creed's roommate, the real inquiry is whether the overdose was foreseeable following the residence staff's Friday morning welfare check. Residence staff witnessed some evidence consistent with intoxication during this check, but expecting the residence staff to recognize this as evidence of an impending emergency would be to demand clairvoyance. The Plaintiff's own expert admits that it was perfectly "logical" for the staff to believe that they merely observed a "common reaction to [Mr. Creed's] medications." [Citation omitted]. The situation observed by the residence staff would have also, of course, been consistent with less distressing behavior typical of college freshmen.

As for petitioner's contention that respondent's campus police should have intervened, the circuit court expressed its concern that a finding of negligence would require a university to involve the criminal justice system in every instance of "sluggish" behavior or in every unsubstantiated report of drug abuse. The court found that to require police intervention in a case such as this would, as a matter of law, be inconsistent with respondent's duty as set forth by the court. The court determined that there was no contention in this case that Mr. Creed's overdose was at all traceable to the conduct of respondent or its agents and granted summary judgment in favor of respondent.[4] Petitioner now appeals to this Court.

**Discussion**

In syllabus point two of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court has held that

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

On appeal, petitioner raises the following four assignments of error: (1) the circuit court erred by granting summary judgment sua sponte on an issue not raised by respondent in its summary judgment motion; (2) the circuit court erred by granting summary judgment without

---

[4] The court also granted summary judgment with respect to petitioner's breach of contract and promissory estoppel claims. On appeal, petitioner challenges only the dismissal of her negligence claim.

4

properly considering whether the actions or inactions of respondent's campus police created a genuine issue of material fact as to respondent's negligence; (3) the circuit court erred when it improperly assumed the role of fact finder and granted summary judgment based on its finding that decedent's death was not foreseeable to respondent's administrative personnel and residential staff; and (4) the circuit court erred because the opinion and deposition testimony of petitioner's expert precludes an award of summary judgment to respondent.

In her first assignment of error, petitioner argues that respondent's summary judgment motion focused solely on whether petitioner could establish, as a matter of law, that respondent owed her son a duty of care. Petitioner argues that, after disagreeing with respondent and concluding that a duty of care existed, the circuit court improperly considered, sua sponte, whether there was a triable issue as to a breach of that duty or proximate causation. We have held that

> [a]s a general rule, a trial court may not grant summary judgment *sua sponte* on grounds not requested by the moving party. An exception to this general rule exists when a trial court provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is *sua sponte* considering granting summary judgment.

Syl. Pt. 4, *Loudin v. Nat'l Liab. & Fire Ins. Co.*, 228 W.Va. 34, 716 S.E.2d 696 (2011).

The premise of petitioner's first assignment of error is that the circuit court granted summary judgment on an issue not raised by respondent. Petitioner's premise, however, is incorrect. While it is true that the lion's share of respondent's summary judgment motion was devoted to its unsuccessful argument that no duty existed, respondent also argued that, if the court found a duty existed, the overdose was not foreseeable as Mr. Creed's overdose was an intervening cause.[5] In fact, in her response in opposition to respondent's motion filed below, petitioner devoted almost five pages to responding to the argument that she now contends respondent failed to make. As respondent argues, the reasoning for the circuit court's grant of summary judgment was briefed and argued by the parties below, and, therefore, the circuit court did not grant summary judgment on grounds not requested by respondent. Accordingly, we reject petitioner's first assignment of error.

Petitioner's second assignment of error is that the circuit court granted summary judgment without properly considering whether the actions or inactions of respondent's campus police department created a genuine issue of material fact as to respondent's negligence. In response to respondent's motion, petitioner presented the expert report and deposition testimony

---

[5] We note that, in its order granting summary judgment, the circuit court determined that the question of whether respondent owed a duty of care to its resident students was an unsettled question in this State. We also note that the circuit court devoted a substantial amount of analysis to resolving this question in the affirmative. However, because we agree with the circuit court that respondent was entitled to summary judgment on the alternate basis that petitioner could not, as a matter of law, establish a breach of its duty (assuming the duty existed), we need not address the duty question herein.

of Keith Howse, a purported expert in the field of public safety and police practices as it relates to college campuses. He opined that respondent's campus police acted with gross incompetence in their handling of Mr. Creed's welfare and callously deviated from generally accepted investigative tenets.[6]

We reject this argument for the same reason we rejected petitioner's first assignment of error – it is based on a false premise. In its discussion of whether petitioner established a triable issue as to respondent's breach of its duty, the circuit court addressed petitioner's contention that the campus police should have "intervened." However, the court concluded that imposing "a requirement of police intervention in a case such as this would, as a matter of law, be inconsistent with the duty [the court] has pronounced above." Moreover, petitioner does not identify any disputed facts regarding the police intervention that warrant reversal of summary judgment. As respondent argues, Mr. Howse did not dispute the relevant facts; he merely offered an opinion as to the ultimate issue of whether the lack of intervention caused Mr. Creed's death. Referring to Mr. Howse's deposition testimony, the circuit court found that petitioner "has not provided even a scintilla of evidence regarding an alternative form of intervention beyond a passing reference to a speculative 'crisis intervention team.'" As noted above, the circuit court did not leave unaddressed petitioner's claim that the campus police were to blame for Mr. Creed's death. The court addressed it, and properly rejected it. Thus, we find no error in this regard.

In her third assignment of error, petitioner argues that the circuit court erred when it improperly assumed the role of fact finder and granted summary judgment based on its finding that decedent's death was not foreseeable to respondent's administrative personnel and residential staff. In syllabus points eleven and twelve of *Strahin v. Cleavenger*, 216 W.Va. 175, 603 S.E.2d 197 (2004), this Court held as follows:

> When the facts about foreseeability as an element of duty are disputed and reasonable persons may draw different conclusions from them, two questions arise—one of law for the judge and one of fact for the jury.

> A court's overall purpose in its consideration of foreseeability in conjunction with the duty owed is to discern in general terms whether the type of conduct at issue is sufficiently likely to result in the kind of harm experienced based on the evidence presented. If the court determines that disputed facts related to foreseeability, viewed in the light most favorable to the plaintiff, are sufficient to support foreseeability, resolution of the disputed facts is a jury question.

Petitioner argues that, in the present case, once the circuit court determined that a duty existed as a matter of law, it was required to allow the jury to decide the clearly disputed factual issue of whether Mr. Creed's death was foreseeable. Petitioner continues that, in arriving at the wrong conclusion, the circuit court ignored that the report of the roommate and the observations

---

[6] Mr. Howse's report states that the campus police should have conducted a full criminal background check on Mr. Creed, contacted his home state of Pennsylvania, and launched a criminal investigation into the report by the roommate.

of the residence staff when they checked on Mr. Creed created an issue of fact as to foreseeability.

Contrary to petitioner's argument, however, we find no error in the circuit court's dismissal of the case, even in light of *Strahin.* We also wrote in *Strahin* that

> [t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? Syl. Pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

216 W.Va. at 184, 603 S.E.2d at 206. We further reiterated that "[q]uestions of negligence . . . present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." *Id.* at 185, 603 S.E.2d at 207 (citations omitted).

In the present case, the circuit court did not act under any misapprehension of the applicable law; rather, the court expressly acknowledged that questions of negligence typically present issues of fact for a jury to determine. However, the court correctly ruled that simply because a plaintiff alleges negligence does not preclude summary judgment against her. *See* Syl. Pt. 1, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995) (holding that "[t]he mere fact that a particular cause of action contains elements which typically raise a factual issue for jury determination does not automatically immunize the case from summary judgment. The plaintiff must still discharge his or her burden under West Virginia Rule of Civil Procedure 56(c) by demonstrating that a legitimate jury question, i.e. a genuine issue of material fact, is present."). The circuit court properly ruled that that "recognition of a duty . . . does not end the inquiry," and that, "by acknowledging the existence of a duty of care, the [circuit court] has merely recognized that resident staff are obligated to respond to credible risks of foreseeable danger." The court framed the inquiry as "whether the undisputed facts present a triable question as to the foreseeability of Fairmont State's response in this case."

Upon our review of the record in this case, we concur with the circuit court's conclusion that, even in the light most favorable to petitioner, the evidence could not support a finding that respondent breached its duty to Mr. Creed. As the circuit court correctly recognized, there was an emergent situation foreseeable following the initial report by Mr. Creed's roommate, and the respondent's residential staff properly responded to it. The real inquiry, however, was whether Mr. Creed's overdose was foreseeable following the residence staff's welfare check. The undisputed facts were that the residence staff witnessed indications of intoxication or illness, but that Mr. Creed was coherent. As the circuit court found, it would demand clairvoyance to expect the residence staff to recognize this as evidence of an impending emergency. Thus, we find no error in the circuit court's finding that Mr. Creed's death was not foreseeable to respondent.

Petitioner's final assignment of error is that the opinion and deposition testimony of her expert, in and of itself, should have precluded an award of summary judgment to respondent. Respondent counters with the reasoning set forth in *Carapellucci v. Town of Winchester*, 707 F.

Supp. 611, 620 (D. Mass. 1989), in which that court stated as follows with respect to evaluating an expert's opinion on the ultimate question in a case:

> It is the court's responsibility to determine whether the underlying factual evidence is sufficient to support the ultimate conclusion. The expert's expression of the ultimate conclusion alone does not improve the plaintiff's case against summary judgment or directed verdict. If the law were otherwise, the testimony of expert witnesses could cause the ultimate issue "too easily [to] become whatever an expert witness says it is." *See In re Air Crash Disaster at New Orleans,* 795 F.2d at 1233 (noting that "trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury.") Expert testimony must not be allowed to circumvent the purposes of summary judgment in this manner. *See Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666, 672–73 (D.C.Cir.1977) (noting that Rule 703 was not intended "to make summary judgment impossible whenever a party has produced an expert to support its position.")

We have similarly held that an expert's conclusory affidavit on the ultimate issue of liability is insufficient, in and of itself, to preclude summary judgment. *See Jividen*, 194 W.Va. at 716, 461 S.E.2d at 462.

As we have already stated, in the present case, petitioner fails to identify the specific disputed facts that should have precluded the grant of summary judgment to respondent. Instead, she points solely to her expert's conclusions in the hope that they create a triable issue. As we have already concluded, they do not. As such, we find no error in the circuit court's dismissal of the case on summary judgment even in light of the report and testimony of petitioner's expert.

For the foregoing reasons, we affirm the Circuit Court of Marion County's order granting respondent's motion for summary judgment.

Affirmed.

**ISSUED: May 20, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II